Oscar D. Thompson, Appellant, *v.* The Supreme Tent of the Knights of the Maccabees of the World, Respondent.

Principal and Agent — Liability of Fraternal Corporation for Acts of Officers in Conducting Initiation of Members.  The Supreme Tent of the Knights of Maccabees of the World, having jurisdiction and control over all subordinate tents, and having enacted by-laws requiring the officers of such tents to carry out the directions of the ritual established and promulgated by it, is liable for personal injuries sustained by a member during his initiation into a subordinate tent, in consequence of the acts of officers thereof, who were by such ritual required to do the very acts which produced the injury; under such circumstances the officers and members conducting the initiation ceremonies act as the lawfully constituted agents of the Supreme Tent within the scope of the authority vested in them.

*Thompson* v. *Knights of Maccabees,* 114 App. Div. 906, reversed.

(Argued June 12, 1907; decided October 8, 1907.)

Appeal from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered June 6, 1906, which reversed a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial and granted a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*E. W. Gardner* for appellant.  The defendant was clearly responsible for its acts; it was not wholly a question as to what individuals did, it was the tent, the organization which was created by the defendant.  As to the question of the

tent being the servant and agent of the defendant, if there was any conflict of testimony upon the question, then it was purely a question of fact for the jury. (*Mott* v. *C. I. Co.*, 73 N. Y. 543; *Given* v. *N. Y. C. & H. R. R. R. Co.*, 166 N. Y. 291; *Bank of Batavia* v. *N. Y., L. E. & W. R. R. Co.*, 106 N. Y. 195; *Day* v. *B. C. R. R. Co.*, 12 Hun, 435; *Rounds* v. *D., L. & W. R. R. Co.*, 64 N. Y. 134; *McQuinn* v. *Powers*, 87 N. Y. 535; *Ochsenbein* v. *Shapley*, 85 N. Y. 215; *Shea* v. *S. A. R. R. Co.*, 62 N. Y. 180; *McCann* v. *S. A. R. R. Co.*, 117 N. Y. 505; *Albring* v. *N. Y. C. & H. R. R. R. Co.*, 174 N. Y. 179; *Serano* v. *N. Y. C. & H. R. R. R. Co.*, 188 N. Y. 156.)

*George P. Keating* for respondent. The judgment of the Appellate Division reversing the trial court was correct, for the reason that the question was improperly left to the jury by the trial court to determine whether or not the individuals who inflicted the alleged injuries on the plaintiff were the agents of the defendant, and if the agents, whether they were acting within the scope of their authority, no relation of agent or servant having been established. (*Brown* v. *Order of Foresters*, 176 N. Y. 539; *Wyllie* v. *Palmer*, 137 N. Y. 257; *Moest* v. *City of Buffalo*, 116 App. Div. 657; *Lopay* v. *County of Monroe*, 162 N. Y. 563; *Jumper* v. *Order of Woodmen*, 127 Fed. Rep. 635; *Kinver* v. *Phœnix Lodge*, 7 Ont. [Q. B. D.] 377; *State* v. *Webster*, 75 N. C. 134; *Kaminski* v. *Knights of Maccabees*, 109 N. W. Rep. 33; *Joslin* v. *Ice Co.*, 50 Mich. 516; *Wiltse* v. *Bridge Co.*, 63 Mich. 639.)

Haight, J. This action was brought to recover damages for personal injuries alleged to have been sustained by the plaintiff during his initiation into one of the defendant's subordinate tents. The evidence tends to show that in January, 1903, the plaintiff made an application, in writing, to be admitted to a beneficiary membership in Hopewell Tent, No. 305, of the Supreme Tent of the Knights of the Maccabees of the World, and that a benefit certificate issue for $500,

payable to his wife.  This application was subsequently
approved by the medical officers, and plaintiff was elected to
membership in Hopewell Tent, and thereupon in February,
1903, he appeared at a meeting of that tent for initiation.
At such meeting one McClure, a past commander of the
order, at the invitation of the lieutenant commander, con-
ducted the ceremonies for the initiation of the new members,
and during such ceremonies the plaintiff, while standing in
line with other applicants for initiation, was suddenly seized
from behind by the shoulders, by one Rolland, a member of
the order who had been selected for that purpose, and his
body bent backward so that he fell against the man who
seized him, producing an injury to the muscles, or spinal
column of the back, which it is claimed has ever since inca-
pacitated him from manual labor and has caused him much
pain and suffering.

While there was some conflict upon the trial with reference
to the extent and durability of the plaintiff's injury, the wit-
nesses all substantially agreed with reference to the details of
the act complained of.  The trial court submitted to the jury
the question as to whether the officers and persons conducting
the ceremony in question were the agents of the defendant act-
ing within the scope of their authority, to such an extent as to
make the defendant liable for the injury produced.  This
question was raised by the defendant's counsel, in his motion
for nonsuit and for the direction of a verdict in the defend-
ant's favor, who claimed that the acts complained of were
those of the Hopewell Tent, its officers and members, and
were not those of the Supreme Tent.  This, therefore, becomes
the question in the case.  If there was evidence given upon
the trial sufficient to carry this question to the jury, then
the verdict was proper.  Otherwise there should have been
no recovery.

The Supreme Tent of the Knights of the Maccabees of the
World is, as we understand, a Michigan corporation duly
organized under the laws of that state, and has been author-
ized to transact business in this state as a fraternal beneficiary

order, for the relief, by insurance, upon the mutual or assessment plan, of persons or beneficiaries, in the case of disability or death, and its business is transacted upon the lodge plan through subordinate tents or lodges. The plaintiff at the time of his injury was given a copy of the laws of the order, adopted May 11th, 1893, but the defendant introduced in evidence a copy of the revised laws of the Supreme Tent, which went into force August 20th, 1901. Inasmuch as the plaintiff's injury was received in 1903, we shall consider only the laws of the order then in force. They, in substance, provide that: "The Supreme Tent shall be composed of an unlimited number of great camps and subordinate tents organized as hereinafter provided." "It shall have power to make its own laws, rules and regulations for the government of the association, which shall not conflict with the articles of incorporation or the laws of the land." "It shall possess original and exclusive jurisdiction over all great camps and subordinate tents." "It shall be the supreme tribunal to which all final appeals shall be made on matters arising under these laws." "It shall be the judge of the election and qualifications of its own members, and decide contested elections." "It shall possess the power to regulate and control its benefit funds, fix the monthly rates on members, receive appeals and redress grievances, provide for its own support, and do all other legitimate acts necessary to promote its welfare." "It shall have power, when an appeal is made under the laws of the association from the action or findings of the Court of Appeals, to decide as to the validity of all death claims or any other claim which a member or the beneficiary of a member may have against it." It, or the board of trustees, when the Supreme Tent is not in session, "may require the surrender by a Great Camp of its charter, supplies, records, property and all its money." Its board of trustees is given the power to pass orders to cover any cases which are not provided for in the laws of the association or by the actions of the Supreme Tent, and to suspend beneficiary members from all the benefits of the association in cases specified. The supreme commander

is given the general superintendence of the association, with power to grant dispensations for great camps, and charters to subordinate tents. He may appoint a deputy for each state, and remove from office any tent officer. All the officers provided for by the laws are required to perform such duties as are prescribed by the ritual, and as may be ordered from time to time by the Supreme Tent. The tent commander is, required to enforce the laws, rules and usages of the tent and of the association. The lieutenant commander shall aid the commander and perform such other duties as the rules and ritual may require and the by-laws of the tent enjoin. The duties of the other tent officers shall be such as are prescribed in the ritual of the association. All rituals shall be procured of the Supreme Tent. When a tent is suspended, all the books, property, etc., must be delivered to the supreme commander of the Supreme Tent. The ritual is a separate book furnished by the Supreme Tent, and among other things prescribes the ceremonies that shall be followed upon the initiation of members. The only part of which is necessary to be considered in this case has reference to the proceedings where the lieutenant commander approaches the sir knight commander, stating, "You have forgotten the grip," to which the commander replies, "Oh, yes, the grip." He then addresses the candidate for initiation by stating, "You will follow me and note carefully the motion of my fingers." Then the instructions are partly in cipher, which are translated as follows: "The commander should extend his left hand to candidate as if about to shake hands. When the candidate extends his hand to take that of the commander, he should be seized and drawn back quickly by the Master at Arms, or some other member selected for that purpose, who should approach from the rear unobserved by the candidate. As the candidate is thus seized, the lieutenant commander should say, ' Sir Knight Commander, an imposter ! ' " It was during the execution of this part of the ceremony prescribed by the ritual that the plaintiff received the injury complained of.

The Supreme Tent, as we have seen, is a corporation organized under the laws of another state, doing business in this state. It makes the laws, rules and regulations for the government of all the associations under it. It possesses original and exclusive jurisdiction over all great camps and subordinate tents. It establishes great camps and subordinate tents. These camps and tents are unincorporated associations subject to the control and management of the Supreme Tent, which may, when it sees fit, revoke the charters of the great camps or the subordinate tents, and require the return to it of all the books, records and property they may possess. We thus have a corporation having jurisdiction and control over all subordinate tents, which has enacted by-laws requiring the officers of such tents to carry out the directions of the ritual established and promulgated by it, in which such officers are required to do the very act which produced the injury to the plaintiff. We think that these laws and ritual furnish evidence from which the jury might find that the officers and members conducting the ceremonies in initiating the plaintiff were not only following the directions of the ritual, but that they were also acting as the lawfully constituted agents of the Supreme Tent, within the scope of the authority vested in them, when the injuries complained of were inflicted upon the plaintiff.

The learned Appellate Division, in granting a new trial, referred to the case of *Jumper* v. *Sovereign Camp Woodmen of the World* (127 Fed. Rep. 635). We think that case is distinguishable from this case. It did not appear but that the local lodge was an incorporation acting independently of the Sovereign Camp and it did appear that the *act* of violence which resulted in the injuries to the complainant was adopted by the lodge itself, and was not authorized by the Sovereign Camp or its practice known to have been indulged in. In the case of *Kaminiski* v. *Knights of Modern Maccabees* (109 N. W. Rep. 33) the Supreme Court of Michigan held that no recovery could be had for injuries of a similar character. In that case the court apparently laid much stress upon the provisions of a

by-law to the effect that a subordinate tent and its officers should be the agents of its members in all matters, and that the great camp will not in any case be liable for any fault or negligence on the part of a subordinate tent or any of its officers. In this case the provisions are somewhat different. They provide as follows : " A subordinate tent shall be the agent of its members in making applications for membership, in the admission of members, the collection and transmission to the Supreme Tent of all dues and monthly rates, and in the serving of all notices required under these laws to be served on the members of a subordinate tent." "The Supreme Tent shall not be liable for negligence in any of these matters, nor be bound by any irregularity or illegal action on the part of such subordinate tent." It will be observed that the matters for which the subordinate tent becomes the agent of its members are confined : (1) To the making of applications for membership and their admission. (2) To the collection and transmission to the Supreme Tent of all dues and monthly rates. (3) To the serving of all notices required, etc. Nothing in these provisions pertains to the initiation ritual. Then again, referring to the provisions of the next section, we find that the Supreme Tent shall not be liable for negligence in any of *these* matters. The matters referred to pertain to the admission of members, the collection and transmission of their monthly rates to the Supreme Tent, and to the serving of notices. The Supreme Tent shall not " be bound by any irregularity or illegal action on the part of any subordinate tent." If any of the provisions referred to have reference to the negligence of the officers of the Supreme Tent in executing the requirements of the ritual, it must be found in the latter provision, " as an illegal action." But this we think cannot be the construction intended, for, as we have seen, the ritual expressly authorized the suddenly seizing of the applicant unawares, and the bending of him backward. To hold otherwise would charge the Supreme Tent with requiring its subordinates to do an illegal act, and then with adopting a by-law to the effect that it would not be liable therefor. It

doubtless did not occur to the officers of the Supreme Tent, in adopting the ritual, that the act authorized by them might in some instances produce harm, or that some of its subordinate officers might execute the command of the ritual with more force than others. But it is apparent that they intended that the applicant should be taken unawares and frightened. He was to be approached from the rear unobserved, and was to be seized and drawn back quickly, with the announcement of the lieutenant commander, "An imposter." We, therefore, are of the opinion that these provisions ought not to be construed as constituting a contract on the part of the plaintiff to relieve the defendant from liability. But even if they should be so construed, we should still hesitate about adopting the conclusion reached by the Michigan court in the case alluded to ; for, in *Matter of Brown* v. *Order of Foresters* (176 N. Y. 132) we have held that, "In so far as the defendant attempted by the enactment of by-laws to make the default or misconduct of its own agent and officer the default and misconduct of the members, who had paid their dues and assessments precisely as the regulations required, its action was nugatory." And in the case of *Johnston* v. *Fargo* (184 N. Y. 379) we have held that a corporation or an association cannot relieve itself from liability for personal injuries by reason of the negligence of its own officers, by requiring its servants to enter into a contract to the effect that it shall not be liable therefor. (See, also, *Mitchell* v. *Leech*, 66 L. R. A. 723; *Knights of Pythias* v. *Withers*, 177 U. S. 260; and, note, *Tumber* v. *Sovereign Camp*, 59 Central Law Journal, 48–52.)

We are not disposed to criticise the defendant on account of its being a secret society. Its main object is the insurance of its members against disability and death, and as such we recognize the fact that it has accomplished much good. Coupled with the mutual benefit of its members through insurance, is the social and fraternal feature, which, through the secret rituals of their lodges, have enabled them to keep their members in touch with each other and interested in the work of the tents. We think, however, that other acts might

be prescribed by the ritual, from which the importance of the work of the tent might be impressed upon the mind of the applicant without resorting to violence.

The order appealed from should be reversed and the judgment entered upon the verdict affirmed, with costs in this court and that of the Appellate Division.

CULLEN, Ch. J., EDWARD T. BARTLETT and VANN, JJ., concur; WERNER and HISCOCK, JJ., not voting; GRAY, J., absent.

Ordered accordingly.