GRAND TEMPLE AND TABERNACLE OF KNIGHTS AND DAUGHTERS OF TABOR OF THE INTERNATIONAL ORDER OF TWELVE v. JOHNSON.

(Court of Civil Appeals of Texas. Feb. 15, 1911. On Motion for Rehearing, March 8, 1911.)

1. APPEAL AND ERROR (§ 1051*)—HARMLESS ERROR—ADMISSION OF EVIDENCE.

Admission in evidence of a society's constitution, on identification by a witness not qualified to testify thereto, was harmless error, where the same facts were also sworn to by a fully competent witness.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4161–4170; Dec. Dig. § 1051.*]

2. BENEFICIAL ASSOCIATIONS (§ 20*)—INITIATION—INJURIES—VARIANCE.

In an action against a beneficial association for personal injuries, caused while plaintiff was being initiated, an allegation that he was tripped by one of the officers and agents of the organization is broad enough to cover tripping by a sword or saber or any other kind of tripping.

[Ed. Note.—For other cases, see Beneficial Associations, Dec. Dig. § 20.*]

3. BENEFICIAL ASSOCIATIONS (§ 7*)—TORTS OF MEMBERS—LIABILITY.

In an action against a beneficial association for injuries from a fall caused by tripping while being initiated, where all the testimony showed that the tripping was not a part of the ceremony, but an independent act of some one in the temple, the association was not liable.

[Ed. Note.—For other cases, see Beneficial Associations, Dec. Dig. § 7.*]

4. PRINCIPAL AND AGENT (§ 159*)—TORTS—LIABILITY.

A principal is liable for the torts of his agents done in the prosecution or furtherance of the principal's business, and for acts of the agent expressly authorized, and for acts done in the course of the agent's employment for the principal's benefit, whether authorized or ratified or not, or even though forbidden.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 599–613; Dec. Dig. § 159.*]

5. BENEFICIAL ASSOCIATIONS (§ 20*)—LIABILITY—AGENTS—ACTS OUTSIDE OF PRINCIPAL'S BUSINESS.

In an action against a beneficial association for injuries to one of its members from a fall caused by tripping, evidence held to show that, even if the person who tripped plaintiff was the duly constituted agent of the association, he was acting outside of his principal's business, for purposes of his own, so that the association is not liable.

[Ed. Note.—For other cases, see Beneficial Associations, Cent. Dig. § 55; Dec. Dig. § 20.*]

6. BENEFICIAL ASSOCIATIONS (§ 16*)—ACTS OF AGENTS—LIABILITY—GRAND ORDER.

Where a subordinate temple of a beneficial association has been fully organized and received its charter, the relation neither of master and servant nor principal and agent existed between the grand body and members of the subordinate temple inflicting an injury while acting outside of its authority, and not in furtherance of its business.

[Ed. Note.—For other cases, see Beneficial Associations, Cent. Dig. §§ 32–35; Dec. Dig. § 16.*]

. Appeal from District Court, Bexar County; Arthur W. Seeligson, Judge.

Action by Smith Johnson against the Grand Temple and Tabernacle of the Knights and Daughters of Tabor of the International Order of Twelve. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Carlos Bee and C. C. Todd, for appellant. T. H. Ridgeway, for appellee.

FLY, J. This is a suit for damages instituted by appellee against appellant and the International Order of Twelve, Knights and Daughters of Tabor, alleged to have accrued by a fall during the initiation and obligation of appellee. It was alleged that appellant is a fraternal beneficiary society duly incorporated under the laws of Texas and affiliated with and under the jurisdiction of the other defendant, and that appellant has, in Texas, many local temples and tabernacles under its control and jurisdiction, one of which is known as Lone Star Temple No. 143 and is located in the city of San Antonio, Bexar county, Tex.; that on or about September 26, 1908, appellee applied for membership in the local temple and filed his application with one W. C. Banks, who was the presiding officer of the local temple, and paid him the required amount of money, and appellee was notified to attend to be initiated and obligated, and he was prepared by being blindfolded and then was conducted in and about the hall by the agents of the two grand organizations, and was negligently tripped and caused to fall to the floor with great force and violence and was seriously and permanently injured. In another count it was alleged that the fall was caused by a rug or carpet which was loose and turned or rolled up. An answer was filed not signed by appellant or its attorney, but it was treated by the court and parties as an answer by the defendants, in

which there were general and special exceptions, a general denial, and pleas that the agents were acting outside of and beyond their authority and of assumed risk. The cause was tried by a jury, and a verdict was instructed for the International Order, Knights and Daughters of Tabor, and the jury returned a verdict against appellant in favor of appellee for $4,680, and judgment was rendered thereon.

Appellant, under its grandiloquent name, was chartered by the state of Texas as a benefit society and was given the authority to organize and establish subordinate temples, tabernacles, tents, and palatiums in the state of Texas. A temple had been or was being formed on the night that appellee was being initiated and was tripped and thrown upon the floor. By-laws were adopted by appellant for its subordinates, by which the local temple was authorized to choose its own officers, pass upon the qualifications of candidates, and confer degrees upon them according to a ritual prescribed by the grand or parent society, or temple. As will appear in the further course of this opinion, it is not entirely plain whether the local temple was in course of organization at the time of the accident or had been fully organized. Who the guilty party was is not disclosed by the evidence, although there was testimony showing that each of the nine guides in charge of the initiates carried fencing sabers, and that the tripping of appellee was accomplished through a fencing saber. Further conclusions of fact are drawn in the consideration of the points presented by the different assignments. The local temple was not made a party to the suit.

The first assignment of error complains of the admission in evidence of "what purports to be the constitution of the Grand Temple and Tabernacle, Subordinate Temples and Tabernacles, International Order of Twelve," because it was not properly identified. The book was identified by Van Duzer, an officer of the local temple, as the constitution and by-laws governing all local lodges in Texas; but appellant contends that the evidence was not sufficient because the witness never held an office in the grand body, and had never attended its meetings. The Tennessee case of Page v. Knights and Ladies of America (Tenn. Ch.) 61 S. W. 1068, is cited as sustaining the position of appellant, and, while not as clear as it might be, yet we gather that the court sustains appellant's position. We prefer, however, the decision of the Court of Civil Appeals in the Fifth District of Texas, in the case of Home Circle Society v. Shelton, 81 S. W. 84, in which it was held that the secretary of the local society could testify that a certain document contained the constitution and by-laws furnished by the grand society. However, a discussion of the question is unnecessary as Banks, an officer of the grand temple, swore to the same facts without objection.

The petition alleged in one count that appellee was tripped by one of the officers and agents of appellant, and that allegation was broad enough to include tripping by a sword or fencing saber or in any other way. Appellant should have been prepared to meet proof of any kind of tripping.

The uncontroverted evidence shows that one W. G. Banks was a deputy of the appellant and was the "Chief Presider" in Lone Star Temple No. 143, which was organized on August 19, 1908, and on October 13, 1908, while appellee was being marched, with other initiates, about the room in which the local temple was holding its meeting, and while he and his fellow initiates were blindfolded, he was tripped by having a foil or fencing saber placed between his legs and was thrown to the floor and seriously and permanently injured. The deputy testified, and it was not contradicted, that there was no initiation of appellee and associates, as they were charter members, but they were merely blindfolded and obligated; the secrets of the society being communicated to them. It appears from the constitution of the grand body that the subordinate bodies frequented by the males were called temples and those by the females tabernacles; the chief officers of the first being called Chief Mentors, and of the last High Priestesses, who formed representatives of the grand body. The Chief Grand Mentor was authorized to appoint any number of deputies, males and females, to build up the order, and the method of organizing subordinates was to have clubs formed with a president, secretary, and treasurer, and when the club was ready the deputy gave "the degrees to the entire club at the same time, by obligation and instruction in the signs, token and words." The officers were installed when the charter or warrant was received. Banks, the deputy, swore that the charter for the local temple had been received, and that it was a meeting of the temple at which appellee received his injuries. He swore that no saber or foil was, according to the ritual, to be used in the initiation of members, and it was not shown directly that the guides conducting the candidates and who were appointed by Banks were connected with the tripping of appellee. All of those present except the candidates were members of the society organization. Appellee testified that the nine guides who conducted the hoodwinked candidates each had a fencing saber or foil, and that he was thrown to the floor by having a fencing saber hooked about his leg. It was not shown that any one else had a foil except the guides, and it might be inferred that one of them used the foil in tripping appellee. All the testimony showed that the tripping was not a part of the ceremony, but was the independent act of some one in the temple, presumably a guide.

We will assume that Banks was the duly constituted agent of the parent body, whether he was acting as chief mentor or deputy, and that he had the authority to appoint as subagents, to assist in carrying out the objects of his office, the nine guides who conducted the blindfolded candidates about the room. It was not controverted that he was acting in one or the other capacity, and neither was it controverted that the tripping by the foil or fencing saber was no part of the ceremonies authorized by the grand body under whose authority the work was taking place, and the only question of importance in this case is as to the liability of a parent or grand benefit society for the unauthorized acts of its agents in the ceremonies of initiation, whereby a candidate is injured and damaged.

The law of agency in this case is the same as the law of agency in other cases, which is that the principal is liable for the tortious acts of his agent done in the prosecution or furtherance of the business of the principal. It will not admit of discussion that the principal is liable for all acts of the agent expressly authorized, or which are the result of acts which he has expressly authorized or directed, as well as for tortious acts knowingly ratified by the principal. Where a tort is committed by the agent in the course of his employment for the principal's benefit, he will be liable although he has not authorized or ratified such act, or even though he had forbidden or disapproved of it, and the agent had disobeyed his orders or instructions. Cement Co. v. Reitzer, by this court, not published; Cook v. Navigation Co., 76 Tex. 353, 13 S. W. 475, 18 Am. St. Rep. 52; Burnett v. Oechsner, 92 Tex. 588, 50 S. W. 562, 71 Am. St. Rep. 880. But the act must be done in furtherance of the principal's business and for the accomplishment of the object for which the agency is created.

The authority of Banks, if he was acting as deputy, and his guides, is found in the constitution and consisted in giving "the degree to the entire club at the same time, by obligation and instructions in the signs, token and words." It is not clear, however, whether the lodge had already been organized or not, for Banks is not plain on that point, stating in one instance that the charter is delivered when the officers are installed, and that they were installed on August 19, 1908, and also that the lodge was organized on that date; but in another part of his testimony he states that appellee was a charter member, which he could not have been if he was taken in nearly two months after the lodge was organized, and that he came in under section 9 of the constitution as a club member preparatory to obtaining the charter. He stated also that on the night in question he was "the presiding officer of Lone Star Temple and not connected with the Grand Lodge." In whatever capacity he was acting, however, it is not pretended that there was any provision for the use of a fencing saber in any part of the ceremonies, and Banks swore positively that none was used in the ritual on the night in question, and that if any sword or saber was in the room that night it was the property of some member and had no connection with the lodge's work.

The whole of the testimony shows that the use of the saber was not a part of the ritual, and that it could not be and was not used in the prosecution of the work which the deputy or subordinate lodge was authorized to perform by the parent concern. Even if it had appeared that each of the guides was compelled by the ritual to wear a sword, it cannot be said that the principal would be liable if it were drawn and plunged into the candidate or used to trip him and throw him upon the floor, and there is no theory of the law of agency upon which the principal could be held liable for the unauthorized act. It was no part of the principal's work, was not done in furtherance of his business, and he could no more be liable for such tort than if one of the members had drawn a pistol and shot appellee to death. If it had been necessary in executing the commands of the principal to use a foil or sword about the person of appellee, and in so doing the agent had thrown him to the floor and injured him, appellant might be liable. It is not pretended that any dangerous agencies were permitted to be used in conferring the degrees, and the act of throwing appellee was the flagrant, outrageous, and unauthorized act of some one of the members acting outside of the business of appellant. As said in the case of Railway v. Currie, 100 Tex. 136, 96 S. W. 1073, 10 L. R. A. (N. S.) 367: "But where the servant employs the thing, not in the master's service, but wholly as an instrument of malice or amusement, he takes himself for the time out of the employment." If that can be said in the case of master and servant, it can, with as much, if not more, emphasis, be applied to the case of principal and agent. It is clear to us that, if the person who tripped appellee was the duly constituted agent of appellant, he was acting aside from his principal's business for purposes of his own, and independent of any service for the principal, and that the latter is not liable for his negligence or tort during the performance of such act.

The only authority cited by appellee that seems to sustain the contention that the grand body is liable for the tort of a member of a subordinate lodge acting outside of his agency is the case of Mitchell v. Leech, 69 S. C. 413, 48 S. E. 290, 66 L. R. A. 723, 104 Am. St. Rep. 811, a South Carolina case, which we think is not well considered, and which we decline to follow, as not supported by reason and authority. There is no attempt to discuss the question as to the liability of the grand body; but it is merely stated that it was liable for damages result-

ing from the unauthorized use of a mechanical goat during the conferring of a degree. The authorities cited in the opinion do not sustain it.

In the case of Thompson v. Supreme Tent, etc., 189 N. Y. 294, 82 N. E. 141, 13 L. R. A. (N. S.) 314, 121 Am. St. Rep. 879, which is cited by appellee, it was held that the supreme body was liable for damages resulting from injuries received in a subordinate body, during an initiation according to the ritual of the grand body. The court said: "We think that these laws and ritual furnish evidence from which the jury might find that the officers and members conducting the ceremonies in initiating the plaintiff were not only following the directions of the ritual, but that they were also acting as the lawfully constituted agents of the Supreme Tent, within the scope of the authority vested in them, when the injuries complained of were inflicted on the plaintiff." The New York court placed the liability of the supreme body upon the only reasonable ground by which it could possibly be sustained.

The preponderance of the evidence tends to show the subordinate temple had been fully organized, and had elected its officers and received its charter, and the well-digested cases held that under like circumstances the relation of principal and agent, or of master and servant, did not exist between the grand body and those inflicting the injury while acting outside of its authority and not in furtherance of its business. Kaminski v. Knights, etc., 146 Mich. 16, 109 N. W. 33; Jumper v. Sovereign Camp, 127 Fed. 635, 62 C. C. A. 361. In this case, as in the Michigan case, the initiation of candidates is placed in the hands of the subordinate temples, they judge of the qualifications of applicants, they provide their rooms for meetings and paraphernalia, and it positively appears that the tripping of appellee was no part of the ceremony of initiation. A by-law adopted by the grand body prescribes: "A chartered temple is required to give the candidate the degrees of the temple, in the form found in the ritual, and no other way." The use of the foil or saber was in defiance of that by-law. Speaking of the laws of the society in the case cited, the Michigan court said: "They further provide that the subordinate tent shall decide whether an applicant must be initiated, that it shall select the men to conduct the initiation, that it shall provide its own lodge rooms, furnishings, and paraphernalia for the initiation when conferred, and finally there is nothing in the ritual suggesting that the initiation shall be conducted in such a way as to do physical hurt to the candidate. Whatever may be the liability of the persons conducting the initiation, or of the subordinate tent which has selected them for that purpose, we think it very clear there was no question to be submitted to the jury based upon the idea that the persons who did the injury were the agents of the defendant in that act." We are not called upon for an indorsement of that part of the Michigan decision which gives effect to a rule or by-law of the grand body that it would not be liable for the negligence of its subordinate.

In the case cited of Jumper v. Sovereign Camp, it appeared that the act of violence which resulted in the injuries was not authorized by the Sovereign Camp, and it was held not liable. It is a remarkable coincidence that a mechanical goat inflicted the injury, as in the South Carolina case of Mitchell v. Leech, hereinbefore cited.

In the decision in the case of Kendrick v. Modern Woodmen, 131 Mo. App. 31, 109 S. W. 805, the St. Louis Court of Appeals held: "Having no power to appoint or nominate officers of the local camp who initiated plaintiff into the order, it cannot be held that these officers are the agents or servants of the head camp in the ceremonial process of initiating a member into the order." While under the facts of that case the court properly held that the Sovereign Camp was not liable, we do not deem it necessary to express an opinion as to the soundness of the principle involved in the quotation. The weight of authority seems to hold against it, and we place our decision upon the doctrine involved in the Currie Case, cited herein, that the principal is not liable for unauthorized acts of an agent not done in the furtherance of the business of the former.

The facts clearly showing that the tripping of appellee was unauthorized by appellant, or any of its officers, that it was no part of its ritual, and not done in the prosecution of its business, it follows that there was no basis in law for the judgment of the district court, and it is therefore reversed, and judgment here rendered that appellee take nothing by his suit and pay all costs in this and the lower court.

### On Motion for Rehearing.

Appellee insists that this cause should be remanded, instead of judgment being rendered here, and we think this should be conceded, and an opportunity afforded appellee of showing that the act complained of was done by some agent of appellant in furtherance of the business of the principal. The principles announced in our former opinion are adhered to, and the case will be tried in consonance with them on another trial. The motion for rehearing is overruled, except as to the question of rendition of judgment in this court, our judgment rendered in favor of appellant will be withdrawn, and it is the order of this court that the judgment of the lower court be reversed, and the cause remanded.