GRAND TEMPLE AND TABERNACLE IN THE STATE OF TEXAS OF THE KNIGHTS AND DAUGHTERS OF TABOR OF THE INTERNATIONAL ORDER OF TWELVE v. JOHNSON. (No. 5343.)†

(Court of Civil Appeals of Texas. San Antonio. Nov. 18, 1914. Rehearing Denied Dec. 16, 1914.)

BENEFICIAL ASSOCIATIONS (§ 14*)—TORTS OF MEMBERS—LIABILITY.

The officers of a local lodge of a fraternal beneficial insurance association are, when in the discharge of their duties in pursuance of the ritual, constitution, and by-laws of the order, agents of the order, and where, in discharging the duties in initiating a member into a local lodge, officers negligently injure the member while using an appliance required by the ritual, the order is liable.

[Ed. Note.—For other cases, see Beneficial Associations, Cent. Dig. §§ 27–31; Dec. Dig. § 14.*]

Appeal from District Court, Bexar County; Hon. R. B. Minor, Judge.

Action by Smith Johnson against the Grand Temple and Tabernacle in the State of Texas of the Knights and Daughters of Tabor of the International Order of Twelve. From a judgment for plaintiff, defendant appeals. Affirmed.

See, also, 131 S. W. 1195, 156 S. W. 532.

Carlos Bee and C. C. Todd, both of San Antonio, for appellant. T. H. Ridgeway and John Sehorn, both of San Antonio, for appellee.

CARL, J. Appellee originally sued the appellant, the Grand Temple and Tabernacle in the State of Texas of the Knights and Daughters of Tabor, and the International Order of Twelve Knights and Daughters of Tabor, with which the first named defendant was alleged to be affiliated. In the fourth amended original petition the International Order of Twelve, etc., was dismissed from the suit, and the cause proceeded to judgment against the Grand Temple in Texas, etc., in the sum of $12,000 in favor of Johnson, the appellee. From that judgment this appeal is prosecuted.

This cause has been before this court twice before, and it will not be necessary here to do more than refer to Grand Temple, etc., v. Smith Johnson, 135 S. W. 173, for a full and complete statement of the case. Anything which may not be covered by that statement will appear in the course of this opinion. The various assignments of error briefed by appellant may be summarized as raising three propositions, viz.: (a) Was the guide or guard who negligently permitted his sword to get between the legs of appellee and trip him the agent of appellant? And (b) was the guide or guard acting within the scope of his authority and in the furtherance of appellant's business at the time appellee was injured? (c) Lastly, is the judgment excessive?

This order is a branch of the "International Order of Twelve Knights and Daughters of Tabor," which parent order is chartered under the laws of Missouri. It was shown in evidence that this parent order issues and promulgates what is known as "general laws" and the ritual. The ritualistic work is uniform in all branches of the parent order, and it prescribes the regalia and uniforms. This parent order requires the Grand Temples of the various states to incorporate under the laws of the state where located, as appellant did in this case, and also issues the quarterly pass. Under the head of "Powers and Authority," article II, sections 1, 2, 3, and 5, page 91, of the General Laws of the parent order, which controls appellant, the Grand Temples in the states are given full power and authority in the state of all temples, tabernacles, palatiums, and tents. The Grand Temple and Tabernacle in the state has authority to enact laws and rules (not in conflict with the parent order), and to grant charters to subordinate lodges, and suspend the same. Generally, the Grand Temple is supreme in the state, and all subordinate temples, such as the Lone Star Temple, No. 143, at San Antonio, where appellee was injured, derive their rights, powers, and privileges from the state Grand Temple. It grants the local charters, and its control and supervision are retained and jealously guarded in the laws. The head officer of the Grand Temple, Chief Grand Mentor (who happened to be C. E. W. Day in this case), has power to suspend a temple whenever he may think it necessary. He can suspend a Chief Mentor, such as Banks was, who was at the head of Lone Star Temple, No. 143; and the charter granted appellant by the state of Texas gives the Grand Temple authority to "organize and establish subordinate temples, etc., in the state of Texas." Its constitution provides that:

"The Grand Temple and Tabernacle of Texas shall have jurisdiction and control of the work and business in accordance with the Taborian laws of all temples of the Knights of Tabor * * * within the boundaries of Texas, ex-

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

† Writ of error pending in Supreme Court.

clusively, subject only to the general laws of the Taborian order."

It is made the duty of the Chief Grand Mentor to build up the order, and for that purpose he may appoint any number of deputies. This Chief Mentor, such as Banks was, who was at the head of the San Antonio (or Lone Star) Temple, under section 7, page 52, of the constitution and laws, is made responsible to the Grand Temple and Tabernacle "for the manner in which he administers the laws of the temple. * * * His decision shall be final, until reversed by the Chief Grand Mentor or the Grand Temple and Tabernacle." It is conclusively shown that Lone Star Temple, No. 143, was granted a charter by the Grand Temple and Tabernacle on August 10, 1908, and W. G. Banks was a duly appointed Deputy Grand Mentor of the order. Day appointed him. The names of the charter members were written on the charter when it was granted, and appellee was injured while being initiated, about October 13, 1908, after the local temple was organized in August.

It is the duty of the Chief Guards or Guides to assist the Chief Mentor in giving the degrees and in preserving order, etc., during business hours. As to whose duty it is to bring in candidates and escort them around, the Chief Mentor names whomsoever he chooses, and it thereupon becomes the duty of such favored member to perform that duty, the doing of which is regulated by the ritual. Banks, as Chief Mentor of Lone Star Temple, No. 143, appointed nine guides or guards to go out and bring in the candidates for initiation. The candidates were blindfolded, and were in that condition marched around the hall, to be halted on mysterious squares, called "333," "444," "777," etc. Johnson had made application for membership, his money paid, and he was accepted for membership. He was being initiated, when one of the guides, a part of whose regulation regalia was a sword, negligently permitted same to get between Johnson's legs. He was thereby tripped, and fell, causing his injuries.

The court submitted a full and fair charge to the jury, which is to be commended for its clearness, as well as fairness, and in that charge the jury was told that, if the act which caused the injury was not done while performing a duty of the lodge, but was done intentionally or wantonly, in mischief, for the purpose of having some fun, to find for the defendant.

The law of agency in this case is not different from agency in any other business or employment. And the proposition that, when the local lodge was organized, the parent order was no longer liable, because it had no voice in the selection of the officers or agents, is wholly untenable. The officers of a local lodge of a fraternal beneficiary insurance association, when in the discharge of their duties, in pursuance of the rituals, constitution, and by-laws of the order, are just as much the agents of the parent organization as is a conductor of a railway train the agent of the corporation when he gives orders to start or stop the train on its journey. Bankers' Union of the World v. Nabors, 36 Tex. Civ. App. 38, 81 S. W. 91; Knights of Pythias v. Bridges, 15 Tex. Civ. App. 196, 39 S. W. 333; Trotter v. Grand Lodge, 132 Iowa, 513, 109 N. W. 1099, 7 L. R. A. (N. S.) 569, 11 Ann. Cas. 533, and notes; Supreme Lodge v. Withers, 177 U. S. 260, 20 Sup. Ct. 611, 44 L. Ed. 762; Jones v. Supreme Lodge, 236 Ill. 113, 86 N. E. 191, 127 Am. St. Rep. 277; Mitchell v. Leech, 69 S. C. 413, 48 S. E. 290, 66 L. R. A. 723, 104 Am. St. Rep. 811; Thompson v. Supreme Tent, 189 N. Y. 294, 82 N. E. 141, 13 L. R. A. (N. S.) 314, 121 Am. St. Rep. 874, 12 Ann. Cas. 552. Agency does not depend upon a name; it is measured by the relations of the parties and their relative duties one to the other. It is a matter of substance; not a form. Call it by whatever name you will, but if the facts show that the relation of master and servant exists, if the one commands and gives authority, and the other acts upon and obeys that authority, then the relation of principal and agent exists.

The Grand Temple and Tabernacle of the State of Texas could only carry out the purposes of its charter by the establishment of local lodges, wherein it is provided that certain officers should govern. The parent organization in the state is fed from these local branches, and it can only draw this support and assistance by means of its local agents. This matter has been so well settled that we deem a further discussion useless. This same principle of law was well stated by Justice Fly when this same case was before this court on another occasion, 135 S. W. 175. He says:

"The law of agency in this case is the same as the law of agency in other cases, which is that the principal is liable for the tortious acts of his agent, done in the prosecution or furtherance of the business of the principal. It will not admit of discussion that the principal is liable for all acts of the agent expressly authorized, or which are the result of acts which he has expressly authorized or directed, as well as for tortious acts knowingly ratified by the principal. Where a tort is committed by the agent in the course of his employment for the principal's benefit, he will be liable, although he has not authorized or ratified such act, or even though he had forbidden it, * * * and the agent had disobeyed his orders or instructions."

It is only when the agent is doing some act not in the discharge of his duty that the principal is not liable. For instance, in Railway Co. v. Currie, 100 Tex. 136, 96 S. W. 1073, 10 L. R. A. (N. S.) 367, the agent, Nicholls, was not performing a duty required of him when he turned the compressed air upon Currie and injured him in such a way that he died. He was intending to have some fun at Currie's expense, and that was no part of

his duty to the master. No matter how short a time he may so turn aside from his duties, that which he does while so turning aside from his duties is not an act for which the master is responsible.

But in this case there was no turning aside from the duty to be performed by the guides. In discharging those duties, while initiating Johnson, the negligent use of the sword, with which the rituals authorized the guide to be provided as a part of his regalia and equipment, caused the injury, and such act is attributable to the master. No insurance could have been obtained unless the candidate had been initiated, after the lodge had been organized as it was, and in performing the ceremony of initiation the officers of Lone Star Temple, No. 143, were acting in the furtherance and propagation of the Grand Temple and Tabernacle's insurance business in Texas.

This court is not willing to subscribe to the doctrine that a secret order may provide forms and ceremonies that are, or may by the manner of executing the same become, dangerous, and then escape liability when injury results from the negligence of its agents in carrying out those ceremonies. Neither do we concede that a candidate loses his right of action by reason of the fact that in his application and obligation he may agree to be bound by the constitution and laws of the order and to conform to the forms and ceremonies of initiation; for in the very nature of things he cannot know what those things are until they are made known to him during his initiation and afterwards. There was ample testimony in this case to warrant the jury in finding, as it did, that the sabers were a part of the initiation regalia of the lodge, and that the injuries of Johnson were caused, not by some one desiring to have fun and in a mischievous spirit, but by the negligent handling of the swords by the guides in the performance of a duty to the master.

The evidence of the injury is sufficient to sustain the amount of the verdict found by the jury, and, in the light of the testimony as to the condition appellee is now in, we do not feel like disturbing the judgment.

The assignments, without naming them seriatim, are overruled, and the judgment is in all things affirmed.