MODERN WOODMEN OF AMERICA ET AL. *v.* LYONS ET AL.

[No. 10,265. Filed October 28, 1920. Rehearing denied February 24, 1921. Transfer denied November 18, 1921.]

1. PRINCIPAL AND AGENT.—*Agency.—Inference.*—The law will not, from any general expressions, however broad, infer the existence of an unusual agency, but will rather construe them as restrained to the principal business of the party in respect to which it is presumed his intention to delegate the authority was principally directed. p. 652.

2. PRINCIPAL AND AGENT.—*Agent's Authority in Writing.—Questions for Court.—Scope of Authority.*—Where an agent's au-

thority is conferred and defined in writing, the scope or extent of the authority thus conferred and defined is for the court. p. 653.

3.   INSURANCE.—*Fraternal Insurance.—Local Branches.—Agency. —Scope.—Renting and Caring for Hall.*—A local camp of the Modern Woodmen of America, a fraternal organization, is not the agent of the head camp for the purpose of renting a hall in which to hold its meetings, initiate candidates, etc., or for caring for such hall after securing it, and the head camp of the society is not liable for the negligence of the local camp in caring for a hall resulting in damages to a third person, the by-laws of the order merely permitting, but not requiring, that a local camp shall have a regular hall. pp. 653, 655.

4.   APPEAL.—*Review.—Theory.*—Where a complaint would be construed as basing liability on either of two theories, and the trial court gave an instruction, at plaintiff's request, drawn upon one of such theories, the theory upon which such instruction was drawn will be adhered to on appeal. p. 654.

5.   INSURANCE.—*Fraternal Insurance.—Local Branches.—Agency. —Scope.—Renting Lodge Hall.*—In an action against a local camp and the head camp of the Modern Woodmen of America, evidence *held* insufficient to show that the persons in charge of the local camp's hall were the agents or officers of the head camp for the purpose of renting and caring for such hall, and the head camp was not liable for negligence on their part resulting in damages to a third person. p. 655.

From Tipton Circuit Court; *James M. Purvis,* Judge.

Action by Julius Lyons and others against the Modern Woodmen of America and another. From a judgment for plaintiffs, the defendants appeal. Reversed as to defendant named, and affirmed as to other.

*Truman Plantz, James M. Berryhill, Charles F. Remy* and *J. R. Coleman,* for appellants.

*Gifford & Gifford* and *Wolf & Barnes,* for appellees.

ENLOE, P. J.—On and for sometime prior to April, 1915, the appellees, under the firm name and style of J. Lyons and Son, were, and had been, engaged in the business of selling clothing and gent's furnishing goods, in a three story building situate on the south part of lot No. 30, original town of Kokomo. The appellees occu-

pied and used the first story and basement of said building. The third story of the building was occupied by Kokomo Camp No. 3987, Modern Woodmen of America, as a lodge room; and it was also used by the Knights and Ladies of Honor, as a meeting place for their lodge, under a contract between them and said Kokomo Camp No. 3987. The said camp occupied and used said room under a lease entered into between said camp, by its board of trustees, and one Alice R. Wilson, owner of said building.

On the night of April 22 or 23, 1915, the Knights and Ladies of Honor held a meeting in said lodge room at which new members were initiated, and refreshments served.

On the third floor of said building, and in the rear part of the hallway, was situate a toilet room, entered only from said hallway. On the night in question the bowl of the toilet became stopped up, or clogged, causing the water to overflow. This water so overflowing ran through the floors, and down the walls and thereby injured goods of appellant on the first floor and in the said basement, resulting in this action for the damages thereby sustained.

The complaint which was in one paragraph alleged: "That the defendant, trustees of Kokomo Camp No. 3987 Modern Woodmen of America, are agents for and a subsidiary and subordinate lodge of the said defendant, Modern Woodmen of America; that the said Modern Woodmen of America were, on said date, above mentioned, and had been for many years prior thereto, conducting business in the city of Kokomo, as a fraternal beneficial order, doing an insurance business, and that the agent of said society, in doing all the business herein mentioned, was the said Kokomo Camp No. 3987." There were further allegations concerning the occupancy of said building, damages sustained, the al-

leged negligence resulting in said damage, etc., not necessary to be set out in full.

To this complaint each of the defendants interposed a demurrer, which being overruled, they separately answered, first, by general denial, and second, by separate affirmative answers, to which appellees filed reply in general denial.

Upon the issues thus formed, a trial was had, resulting in a verdict and judgment against both of the defendants, from which, after the overruling of separate motions by the appellant Modern Woodmen of America, for judgment in its favor upon answers returned by the jury to interrogatories submitted, and for a new trial, it prosecutes this appeal.

The appellant Kokomo Camp No. 3987 has not taken the proper steps necessary to present any question in this appeal, and it will not, therefore, be further considered.

The errors assigned and presented by the Modern Woodmen of America hereinafter referred to as the "head camp," and not waived, challenge the action of the trial court in: First, overruling its demurrer to the complaint; second, overruling its motion for a new trial.

The motion for a new trial urged as reasons therefor that the verdict was not sustained by sufficient evidence; was contrary to law; error in giving certain instructions; error in refusing to give certain requested instructions; and error in excluding certain offered testimony.

The trial court at the request of the appellees, gave to the jury the following instruction, viz.:

I instruct you that if you find that the defendant Kokomo Camp No. 3987, Modern Woodmen of America was a subordinate lodge or local camp of Modern Woodmen of America, and that as such local camp it was

charged with certain duties to the other defendant, the Modern Woodmen of America, such as collecting assessments on the benefit certificates in the nature of insurance policies and of remitting the same to the head camp known as the Modern Woodmen of America, and if such head camp had control of such acts of the local camp, and if you find that the said head camp required that the local camp should hold regular meetings at stated times, and fully superintended and approved the local by-laws of the local camp and required that no others should be made or used by the local camp, and if you should find that the said head camp fixed and determined the jurisdiction of the local camp from its meeting place or hall, and provided the ritual which should govern the meetings held by the local camp, and provided the by-laws prohibiting the local camp from having its hall or meeting-place in certain places, and exercised supervision to the extent of prohibiting certain things being done in the hall or meeting-place of the local camp, and if you find that the beneficial members of the local camp by becoming beneficial members, received their benefit certificates from the head camp, and that the local camp was used only as the messenger for conveying the same and conveying assessments from the members to the head camp, then under such circumstances I charge you that the local camp in this case was the agent of the head camp of the defendant, known as Modern Woodmen of America, and the said Modern Woodmen of America would be liable for the acts of the local camp within the scope of its authority."

The averments of the complaint heretofore set out, and the above instruction, definitely fix the theory of the complaint, and place the claimed liability of the head camp upon the fact, that in the use, care, and management of said hall, the said local camp was acting as the agent of said head camp.

We shall first consider the sufficiency of the evidence to sustain the verdict of the jury.

That the local camp was the agent of the head camp for certain purposes, is not denied. The important question we have to consider is as to the extent of this agency.

Counsel for appellant head camp admit that under its by-laws and the authorities the subordinate camp and certain of its officers, are agents for the head camp, as in the initiation of new members. *Supreme Lodge Loyal Order of Moose* v. *Kenny* (1916), 198 Ala. 332, 73 So. 519; *Thompson* v. *Knights of Maccabees* (1907), 189 N. Y. 294, 82 N. E. 141, 13 L. R. A. (N. S.) 314, 121 Am. St. 879, 12 Ann. Cas. 552; *Mitchell* v. *Leech* (1904), 69 S. C. 413, 48 S. E. 290, 66 L. R. A. 723, 104 Am. St. 811; also in the collecting from the members of assessments and per capita tax. *Knights of Pythias* v. *Withers* (1900), 177 U. S. 260, 20 Sup. Ct. 611, 44 L. Ed. 762; *Murphy* v. *Independent Order, etc.* (1900), 77 Miss. 830, 27 South. 624, 50 L. R. A. 111. As to these things the candidate for initiation, or the member, as the case may be, has no voice or choice. He must submit to the initiation, if he would become a member, and the parent, or head society, prescribes the character of the initiation, and the persons who shall act for it in such ceremony. As to the payment of his assessments, he must pay to the officer designated by the parent society, or be in default, and in such cases as the above instanced, it would be repugnant to an enlightened sense of justice to hold otherwise than that the parent society was acting in those matters by its agent.

In the instant case the question involved is as to the hall. Was it the hall of the society generally—The Modern Woodmen of America? Or was it the hall of the said local camp?

The by-laws of the society, adopted by the head camp,

and in force at the time in question, and all of which were in evidence in this case, among other things provide:

"Sec. 2.—Membership. Its membership shall consist of white male persons * * * able to speak and understand the English language, over 18 years of age, believers in a Supreme Being, of exemplary habits and good moral character, citizens of the United States or who have legally declared their intentions of becoming citizens thereof; * * * excluding from membership all persons who, in the capacity of proprietors, stockholders, agents, or servants shall be engaged in the manufacture or sale of malt, spirituous, fermented, vinous, or any intoxicating liquor, to be used as a beverage. * * *."

"Sec. 10.—No person shall be or become a Social or Beneficial member of this Society, who is, or shall be, engaged as proprietor, stockholder, agent or servant in the manufacture or sale of malt, spirituous, fermented, vinous, or any intoxicating liquor, to be used as a beverage. * * *."

"Sec. 12.—Membership Forfeited by Engaging in Liquor Business, or by Conviction of Crime.—Any member of this Society who engages in the manufacture or sale of malt, spirituous, fermented, vinous, or any intoxicating liquor to be used as a beverage, either in the capacity of proprietor, stockholder, agent, or servant, * * * shall by so engaging in said liquor business, * * * *ipso facto*, forfeit his membership in this Society, * * *."

"Sec. 14.—Prohibition Against Intemperance: If any member of this Society, heretofore or hereafter adopted, shall become intemperate in the use of intoxicating liquors * * *, then the certificate held by said member shall, by such acts, become and be absolutely null and void, and all payments made thereon shall be thereby forfeited."

Chapter XVII, of said by-laws, which is entitled: "Society's Head Officers," provides:

"Sec. 98.—Titles of Elective Officers: The elective officers of this Society shall consist of a Head Consul, Head Adviser, Head Clerk, Head Banker, a Board of Five (5) Directors, a Board of seven (7) Auditors, Head Escort, Head Chaplain, Head Watchman, and Head Sentry."

Chapter XXXV of said by-laws, which is entitled "Local Camps.—Prohibition," among other things provides:

"Sec. 264.   Sunday Picnics and Sale of Liquor Prohibited.—No local Camp or members of this Society shall hold a Sunday picnic under the auspices of this Society or any local Camp thereof, nor shall members of the Society or any local Camp permit the sale or use of intoxicating liquors at any meeting of the Camp or at any entertainment given under the auspices of the Modern Woodmen of America; nor shall intoxicating liquors be allowed in the Camp hall or other premises *owned,* leased, or controlled by the Camp.   No local Camp shall be permitted to *own,* rent, lease, or occupy as a place of meeting, hall or rooms directly connected with a saloon, bar, or cafe where intoxicating liquors are provided."   (Our italics.)

Chapter XXXVII.—"Local Camp Officers," provides, "Sec. 267.—Titles of Officers.—The officers of a local Camp are Consul, Past Consul, Adviser, Clerk, (and an Assistant Clerk in Camps so desiring), Banker, Escort, one or more Physicians, Watchman, Sentry, and a Board of Trustees, consisting of three members, who shall be elected as provided in Section 268.   *   *   *."

Section 313 relating to the duties of Local Camp Officers provides: "Board of Trustees—Duties.—The Board of Trustees of the Camp shall have charge of all the property and securities belonging to it, and shall

carry out the directions and instructions of the Camp in matters relating thereto and report accordingly to the Camp. It shall investigate all loans, investments, bills, and claims referred to the Board, and approve the bonds of the Banker and Clerk. The Board shall, with the assistance of the Auditor provided for in Section 274 hereof, on or before the fifth days of January and July of each year, examine the reports, books, and records, and audit the accounts of the officers of the Camp for the preceding semi-annual term, and shall make report of such examination and audit to the Camp at its next regular meeting."

Chapter XLVI.—Discipline of Local Camps, provides:

"Sec. 317. Causes for which Local Camps may be Disciplined.—The following are declared to be offences against the Society, the commission of any of which shall make the Camp committing the same subject to discipline by the Executive Council, which may punish therefor by suspension or revocation of the charter of such Camp and the annulment of the certificates of the members thereof. * * *"

"3. For neglecting or refusing to conform to the Bylaws of the Society, or the rules, regulations, requirements, and decisions promulgated by the proper authority."

"4. For any act of willful insubordination or contempt of any superior authority in the Society. * * *"

In 1912, said Kokomo Camp No. 3987, by John R. Flora, Frank M. Woolary, and John M. Spearman, its then board of trustees, entered into a contract of lease with one Alice R. Wilson, for the use of the premises in question, for lodge purposes, said lease, so far as the same is material to the case at bar being as follows:

## "LEASE.

THIS INDENTURE WITNESSETH, That Alice R. Wilson, Party of the First Part, of the County of Howard, in the State of Indiana has this day demised and leased to the Kokomo Camp No. 3987, Modern Woodmen of America, Party of the Second Part, the following premises, in the City of Kokomo, in the said County and State, to-wit;—

The hall on the third floor of the building now situate on the South side of Lot No. Thirty (30) in the original plat of the Town, (now City) of Kokomo, Howard County, Indiana, together with the rights, priveleges and appurtnances to the same belonging, to have and to hold the same for and during the term of Seven (7) Years from the First day of September, 1912.

And the said party of the second part hereby agrees to pay to said party of the first part, or order, as rent for said premises at the rate of Thirty ($30.00) Dollars per month, the said rent to be paid in advance, at the place designated by said Party of the First Part, in said City of Kokomo, without relief from valuation or appraisement laws.    *    *    *

| | |
|---|---|
| Alice R. Wilson | (SEAL) |
| John R. Flora | (SEAL) |
| Frank M. Woolary | (SEAL) |
| John M. Speerman | (SEAL.)" |

It is not contended in this case, but was, by counsel for appellee, in argument, expressly admitted that so far as said lease was concerned, and so far as Alice R. Wilson, owner of the premises, was concerned, there was and could be no liability of said head camp, on any of the covenants in said lease. But it is insisted that because the head camp exercised supervision of said hall, as to its location, and forbid the doing of certain things therein, and also it prescribed the duties of the officers of the local camp, and also placed certain restrictions upon them; because it required the local camp to meet at certain times, and prescribed the business to be carried on, including the initiation of the candi-

dates; and because it exercised a supervision over by-laws adopted by the local camp, that therefor, the local camp was merely "the errand boy of the head camp."

The precise question presented to us for our consideration in this case, seems to be one of "first impression." If the same has ever received consideration from any court of appeals, such fact has not been called to our attention, and although careful search has been made, we have been unable to find any case where the exact point, now under consideration, has been decided. We must therefore recur to certain fixed legal principles, and endeavor to apply them to the facts in hand, and thereby reach a correct result.

The by-laws of the society, duly adopted by the head camp as the representative legislative body of the society at large, constitute, so far as they relate thereto, the "letter of agency," the "warrant," the "authority" of the local camp, empowering it to work. Some of these provisions are *permissive,* as for instance §247 of the by-laws, empowering the local camps to levy assessments upon its members, in addition to the regular "camp dues"; empowering local camps to consolidate, etc.; or they are *restrictive,*—limitations upon the acts of such local camps.

One outstanding feature of the by-laws of appellant society is the attitude in which it stands, and has always stood, as to the liquor traffic, and the use of intoxicating liquors as a beverage. As to these things, the by-laws speak in no uncertain tones. Sections 2, 10, *supra,* of said by-laws excluded, from becoming members of said society, all persons engaged in any way in the manufacture or sale of intoxicating liquors; section 12, *supra,* provides for a forfeiture of rights as member of the society, by engaging in the manufacture or sale of such liquors; and §14, *supra,* provides for forfeiture of membership in the society by intemperate use of such liq-

uors.    These by-laws, each and all above noted, relate to individual members of the society and their occupation and conduct.

Next we find certain by-laws directed to the local camps.    These in the main are *restrictive.*    They are the *thou shalt nots* of the law of the society.    Their aim and object is clearly to keep the local camps within the spirit of §§2, 10, 12, *supra.*    See §§264, 317, *supra.*

Next we find certain by-laws which provide what officers shall be elected by such local camps, and define the duties of such officers.    Section 267, *supra,* provides for the election by the local camp of a board of trustees; and §313, *supra,* provides and specifies in what their duties shall consist.    It provides, among other things, that such trustees shall have charge of *all the property and securities* of the local camp, and shall, carry out the directions of the local camp in matters relating thereto.

No specific provision of the by-laws of appellant society has been pointed out, creating either the local camp or its board of trustees agents for the society at large, in the matter of renting a hall, or in the caring for such hall, as a meeting place for the local camp.    A careful reading of all the by-laws fails to disclose the existence of any such provision.    If such an agency exists, it must be *inferred* from the other provisions of said by-laws.

In Story, Agency (9th ed.) §21, it is said:    "It is very certain, that the law will not from any general expressions, however broad, infer the existence of such unusual agency; but will rather construe them as restrained to the principal business of the party, in respect to which, it is presumed, his intention to delegate the authority was principally directed."    The same author also says in §62:    "Language, however general in its form, when used in connection with a particular subject matter, will be presumed to be

used in subordination to that matter; and therefore is to be construed and limited accordingly." In §69 the same author says: "In written instruments also of less formal character, the like rule of interpretation generally prevails; and they are never interpreted to authorize acts not obviously within the scope of the particular matter to which they refer."

The propositions thus stated by Story are sustained by the authorities; and it is further held that where an agent's authority is conferred and defined in writing, the scope or extent of such authority, thus conferred and defined, is for the court. Mechem, Agency (2d ed.) §104; 1 Thompson, Trials §1370; *Claflin* v. *Continental Works* (1890), 85 Ga. 27, 11 S. E. 721; *Richmond, etc., Co.* v. *Farquar* (1846), 8 Blackf. 89; *Michigan Mut. Life Ins. Co.* v. *Thompson* (1908), 44 Ind. App. 180, 86 N. E. 503. In the case last cited it was said: "Whether, upon a given state of facts, a person is or is not an agent of another, is a question for the court."

The appellant urges that as the head camp, as the representative of the society, had enacted by-laws, with reference to the location and use of the hall, or meeting place, of the local camps, it thereby made the local camps its agent for the purpose of securing such halls, and that the said halls, when so secured by the local camps, were in fact the halls of the society at large,—The Modern Woodmen of America. To this proposition we cannot assent.

Each and all of the provisions of the by-laws of appellant society, relating to the hall, or meeting place of the local camps, are restrictive in their character, as hereinbefore stated, and to give to them the force and effect contended for, would be to change *restrictive* language into *extensive*.

No place in the said by-laws do we find any require-

ment that the local camp shall have a regular hall, or meeting place. We find that they are permitted to have such hall, and even to own the same, and that if such local camp does have a hall, the same shall be in charge of the trustees of such local camp.

Counsel for appellees in their brief filed herein say: "The direct charge is made against the appellant, Modern Woodmen of America, and not merely against the local camp. It is the theory of the complaint that the persons in charge of the hall and causing the damage were the officers and members of the Modern Wood men of America, directly, and not merely that the local camp was the agent of appellant, Modern Woodmen of America. The complaint is sufficient whether the local camp as an organization was the agent or not."

In Cleveland, etc., R. Co. v. Stewart (1900), 24 Ind. App. 374, 56 N. E. 917, it was said: "Under the well established rule in this State, a complaint must be construed upon the theory which is most apparent and clearly outlined by the facts stated therein. As only one theory can be contained in a single paragraph, the court must construe the pleading most strongly against the pleader, and determine the theory from its prominent and leading allegations." See also, Dyer v. Woods (1906), 166 Ind. 44, 76 N. E. 624; Graham v. Henderson Elevator Co. (1916), 60 Ind. App. 697, 111 N. E. 332.

In the instant case counsel for appellees requested and the court gave to the jury an instruction (No. 6, supra) drawn upon the theory of agency; that the local

4. camp was, in the matter of the use and care for said hall, the agent of the appellant. This theory will be adhered to on this appeal. Western Brass Mfg. Co. v. Haynes Auto Co. (1916), 61 Ind. App. 524, 112 N. E. 108.

Was the evidence sufficient to sustain the verdict in

this case? Taking all the evidence in this case and conceding that each and all the facts which such evidence either proves, or tends to prove, as being proven, yet we must hold that such evidence fails to establish the fact of agency, as between the appellant and the said local camp, as to the renting and care of said hall.

If we should go so far as to concede that the theory of said complaint was that which is contended for by appellees on this appeal, viz.: that the persons in charge of said hall and causing the damage, were the officers and members of the Modern Woodmen of America, still the evidence is not sufficient to sustain the verdict. The only evidence offered concerning the officers of the appellant, was the by-laws, and they provide (§98) the title by which said officers shall be known and designated. All, and the only officers shown by the evidence in this case to have had anything to do with the renting, care, and management of the hall in question, were officers of Kokomo Camp No. 3987; no one of the officers designated in §98, *supra,* were in any way by the evidence in this case, connected with the renting, care or management of the hall in question.

The evidence, being insufficient to sustain the verdict, the court erred in refusing to give instruction No. 7 requested by appellant, and in overruling its motion for a new trial.

Other assigned errors need not be considered.

The judgment is affirmed as to Kokomo Camp No. 3987, and is reversed as to appellant Modern Woodmen of America, and the cause remanded, with directions to sustain said appellant's motion for a new trial, and for further proceedings.

Remy, J., not participating.