LUCY MATKIN V. SUPREME LODGE KNIGHTS OF HONOR.

No. 3250.

1. **Knights of Honor — Initiation Necessary to Membership.** — It is clear from the constitution and by-laws of the order of Knights of Honor that initiation is indispensable to membership. It is only upon the death of "a member who has attained the degree of the subordinate lodge" that the supreme lodge could order payment to the beneficiary of the certificate of membership. See discussion of constitution and by-laws.

2. **Initiation.**—That the ceremony of initiation is secret does not affect it, and it can not be held by the court to be a useless or unreasonable requirement to membership.

APPEAL from Rusk. Tried below before Hon. A. J. BOOTY. The opinion states the case.

*Charles C. Leverett*, for appellant.—1. When the minds of the parties to a contract meet, and the mind of each is evidenced by an act upon which the other had a right to rely, the one says, "I will pay you so much a year to insure my life," or, "I will obey your constitution and by-laws and pay you such amounts of money as your laws require, and whenever required," and the insurer accepts the proposition, no matter whether the money is paid or not, it makes a complete contract of life insurance. Ins. Co. v. Ins. Co., 19 How., 318; Tayloe v. Ins. Co., 9 How.; Freid v. Ins. Co., 50 N. Y., 243.

2. On application for membership, whereof the parties have met upon a distinct proposition made by the one and accepted by the other, chancery will decree its execution; or, regarding that done which ought to be done, chancery will take account and make such decree as is just and proper from the case in the bill. Ins. Co. v. Jenks, 5 Ind., 96.

3. The constitution and by-laws are the source of authority, and the court can not look to secret or ritualistic rules not found in the constitution and by-laws to determine the contract between the parties. Supreme Lodge v. Grace, 60 Texas, 569.

4. Initiation was only an evidence of the contract, a formal announcement in the presence of all the parties to the contract that such contract had been made.

5. The certificate of membership of a mutual benefit society is not the contract. It is merely an evidence of the contract. The constitution and by-laws is the contract between the parties. Schmick v. Ins. Co., 44 Wis., 375; Niblack on Mut. Ben. Ins., sec. 169.

6. Where the parties to a contract have complied with the substantial requirements of the contract, equity will not permit either party to suffer material injury because of the failure to comply with with some cold formality bearing on the contract. Elementary.

7.   When the lodge accepted the application and elected the appli-
cant a member the contract was complete, and it does not matter
whether the applicant knew of the action of the lodge or not.   Yonge
v. Ins. Co., 30 Fed. Rep., 902.

8.   The following clause in the application, to-wit, "I further agree
and contract that the payment of the proposition fee or the entertain-
ing of the application, unless I am duly elected and initiated according
to the ritual and laws of the order, does not and shall not constitute
membership or give me any of the rights of a member," is unreason-
able, inoperative, and void.

No brief for appellee reached the Reporter.

COLLARD, JUDGE, *Section A.*—This suit was brought by Lucy Mat-
kin, widow of W. T. Matkin, against the Supreme Lodge of the Knights
of Honor, for $2000 insurance.   It is claimed by appellant that W. T.
Matkin at the time of his death was a full-rate member of the Bellview
Subordinate Lodge No. 1958, and that as such his wife is entitled as his
beneficiary to the amount sued for; the constitution of the order pro-
viding that upon the death of every full-rate member the supreme lodge
shall pay to the beneficiary $2000.

Defendant claims that Matkin was not a member of the order, hav-
ing died before he was initiated.

He made his application for membership in the Bellview subordinate
lodge on April 19, 1888.   On May 10, in accordance with the regula-
tions of the order, he was examined by the lodge medical examiner
and recommended to membership, and on May 14 the State medical
examiner approved the examination.   The lodge donated to him the
proposition fee, or fee required to be paid for entertaining his applica-
tion.   The fee was the property of the subordinate lodge and they could
donate it.   All forms were complied with, and on June 7 he was duly
balloted for and elected by the lodge to membership.   After such elec-
tion the laws require the reporter of the lodge within seven days there-
after to notify the applicant of his election, and should the applicant
fail to present himself for initiation within four stated meetings of the
lodge after notification (unless by sickness or other unavoidable occur-
rence), the applicant forfeits his proposition fee and election.   Matkin
was sick when elected, and died on the 9th of June, 1888, two days after
his election. He never presented himself for initiation; he had offered to
pay the $1 fee for his benefit certificate from the supreme lodge, but the
certificate, under the constitution, was to be issued on application of
the subordinate lodge to the supreme lodge, after the applicant had re-
ceived the degree.

The application for membership to the subordinate lodge, as made by
Matkin, among other stipulations binds the applicant to obey and com-

ply with the constitution and laws of the order. It also contains the following clause: "I further agree and contract that the payment of the proposition fee, or the entertaining of this application, unless I am duly elected and initiated according to the ritual and laws of the order, does not and shall not constitute membership or give me any of the rights of a member." The court below, trying the case without a jury, decided that as deceased was never initiated he was not a member of the order, and that without having attained membership his widow designated as his beneficiary could not recover, and judgment was entered accordingly.

She has appealed, and asks that the judgment be reversed, because the evidence shows that the contract was complete; that the deceased was in legal contemplation a member of the order; that it was not shown that initiation was a reasonable requirement and a necessary part of the contract; that the right to membership was not shown to depend upon a ceremony of initiation; and because the court erred it its conclusion of law, because the terms of the contract had been fully agreed upon independent of the act of initiation, the deceased having been duly elected a member of the lodge.

There is really but one question in the case: Was Matkin an insured member of the order? Or, stated differently, was the contract of insurance complete and binding on the defendant? Appellant's brief cites us to several cases as favoring the affirmative of these propositions, as follows: Insurance Company v. Jenks, 5 Indiana, 96, where there was an application for life insurance, accepted by the company and policy issued October 2, 1850, which was sent to the agent and received by him October 5, 1850. The insured had taken sick on the 29th of September and lingered until October 4, when he died. The agent returned the policy to the company. The company had accepted first premium in advertising in applicant's newspaper for six months. It was held that the contract was complete at least on October 2, when it was approved and the policy mailed to the agent. In another case cited, it was held that where the terms of fire insurance are accepted, but the policy is not issued as it should have been, because the day on which it was to issue was a legal holiday, the agreement to issue the policy was binding. Ins. Co. v. Ins. Co., 19 How., 318.

Where the terms of insurance against loss by fire were made known by letter of the company and accepted by the insured, it was held that the contract was complete when he placed the letter of acceptance in the postoffice, the house having burned down while the letter was in progress by mail. Tayloe v. Ins. Co., 9 How., 390. The transmission of a check by mail was held to be sufficient payment, the agent having so instructed the applicant.

Where the premium was sent with a proposal for insurance with an understanding that if the company refused to accept the premium was

to be returned, and the proposal was accepted and policy sent to the agent to be executed by him, which he did, but refused to deliver, the insured being sick at the time and dying soon after, the refusal based upon private instructions from the company, it was held that the contract and acceptance were unqualified and could not be limited by such instructions. Fried v. Ins. Co., 47 Barb., 127.

These cases establish a familiar doctrine, and many more might be cited in support of it, but they are not applicable to the facts of the case before us.

Appellant refers us to the case of Schmick v. Insurance Company, 44 Wisconsin, 370. The deceased member of a subordinate lodge had paid all dues to the same, and upon his death the supreme lodge refused to pay the insurance, because the subordinate lodge had failed to forward the same to the supreme lodge as required. It was held that there was no forfeiture, the deceased being in good standing with the lodge at the time of his death.

In the case before us we have to deal with entirely different questions. We do not think that Matkin had acquired any rights of membership in the lodge to which he applied, because he had never become a member; he had nothing to forfeit. He had only acquired the right to become a member by initiation. It is clear from the constitution and by-laws of the order of the Knights of Honor offered in evidence that initiation was indispensable to membership, and without it he had no contract binding the defendant to allow him to participate in its benefit fund or to exercise other privileges of a member. His election to membership did not confer upon him such rights. He was required by section 6 of article 6 of the by-laws to present himself to receive the degree within six weeks from the time of his election, and upon failure to do so, upon objection being made to his subsequent initiation, a new ballot was to be ordered. By section 1 of article 7 of the by-laws, the payment of dues is made to commence with the date of receiving the degree. It was only upon the death of "a *member* who has attained the degree of the subordinate lodge" that the supreme lodge could order payment to the beneficiary. This is shown by the constitution, article 7, section 7, and article 3, section 4.

The objects of this order as stated in the constitution are not merely to establish a fund for purposes of insurance of members "who have complied with all its lawful requirements," as stated in article 1, section 4, of the constitution, but as also declared in the same article and section, "to unite fraternally all acceptable white men of every profession, business, and occupation," and "to give all possible moral and material aid in its power to its members and those depending on its members, by holding moral, instructive, and scientific lectures, by encouraging each other in other business, and by assisting each other in obtaining employment." With these and other beneficial objects in

view it is not difficult to see why there should be a regular initiation into the order, and why members only can participate in its benefits; that the ceremony of initiation is secret does not affect it; it is doubtless intended to bind the members to a performance of their duties in respect to the objects to be accomplished. We could not say that it is a useless and unreasonable requirement. The affiliation is close and confidential, for good purposes so far as can be seen from the testimony. Were the ceremonies open they could not be said to be unreasonable; because they are secret does not make them so. The entire system, its existence and objects, are based upon initiation. We think there can be no membership without it, and no benefit pecuniary or otherwise without it.

Matkin specially contracted in his application for membership, with reference to initiation, that the payment of the "proposition fee" should not entitle him to any benefit or constitute him a member unless he was duly "initiated according to the ritual and laws of the order." We have not been cited to any case like the one before us, and we have not been able to find any. There are many cases where the courts have interfered with the rulings of such organizations, declaring what was a reasonable or unreasonable regulation, but none that we are aware of directly in point. For instance, where an association enforced a by-law making it an offense for one member to "vilify" another, expelling the member, "the court reinstated the member upon the ground that such a law was not necessary for the good government and support of the corporation." Commonwealth v. Ben. Society, 2 Binney (Pa.), 448. A by-law imposing excessive dues was held to be invalid. Pulford v. Detroit, 31 Mich., 458; and Fire Engine Co. v. Harrison, 93 Pa. St., 264. In the last case cited it is held that the court will not interfere unless the unreasonableness shall be clearly shown. See the above and other cases in American and English Encyclopedia of Law, volume 2, page 173, and note 3.

The stipulation in Matkins' contract, and in the laws of the order making initiation necessary to membership and the enjoyments of the benefits attaching thereto, is not against law or public policy, unreasonable, nor opposed to the good government and objects of the society. On the contrary, it is reasonable and calculated to promote the objects and welfare of the order.

We conclude that there was no error in the conclusions and judgment of the lower court in so holding, and that the judgment should be affirmed.

*Affirmed.*