## JUMPER v. SOVEREIGN CAMP WOODMEN OF THE WORLD.

(Circuit Court of Appeals, Fifth Circuit. February 23, 1904.)

### No. 1,222.

1. PRINCIPAL AND AGENT—SOVEREIGN AND SUBORDINATE CAMPS OF FRATERNAL ORDER—LIABILITY FOR INJURY OF CANDIDATE IN INITIATION.

The Woodmen of the World is a fraternal order, which issues insurance certificates to its members of a certain degree. It has a sovereign camp, which is incorporated under the laws of a state; such incorporation apparently having relation chiefly to the business or insurance feature of the order. It also has local camps, which are authorized to initiate members into the order in accordance with a ritual prescribed by the sovereign

camp; their admission into the business degree and their payment of a prescribed fee carrying with them the right to a certain amount of insurance. *Held,* that in the absence of evidence showing, further than as above stated, the relation between the sovereign and subordinate camps, or whether the subordinate camps are incorporated, the latter cannot be considered the servants or agents of the sovereign camp, in such sense as to render it liable in its corporate capacity for a personal injury inflicted on an accepted candidate for membership by the members of a local camp during the ceremony of initiation; the part of the ceremony which resulted in the injury not being prescribed by the ritual.

In Error to the Circuit Court of the United States for the Northern District of Mississippi.

This was an action brought in the state court of Mississippi by M. F. Jumper, the plaintiff in error, against the Sovereign Camp Woodmen of the World, the defendant in error, to recover damages for injuries alleged to have been received by him, as shown in his declaration, which is as follows:

"Comes M. F. Jumper, plaintiff, by attorney, and complains of the Sovereign Camp Woodmen of the World, a foreign corporation doing business and having branches and agents in the state of Mississippi, and in the second district of Yalabousha county, and first district of Carroll county, Mississippi, thereof, of an action of trespass, for that whereas heretofore, to wit, on the 2d day of May, 1899, plaintiff having applied to and been accepted for membership in said order of Woodmen of the World, a secret society issuing insurance, and requiring an initiation by one of its local branches, placed himself for such initiation, as required, in the hands of the local camp at Water Valley, Mississippi, known as L. Q. C. Lamar Camp thereof, which was a branch of said sovereign camp, and by them authorized and directed as to the mode and manner of conferring said initiation, and when and where he was blindfolded by the acting officers and agents of defendants, Woodmen of the World, authorized by and acting for said sovereign camp, in which initiation he was then and there rudely, roughly, and carelessly handled by said officers and agents, who carelessly and negligently and roughly used unsafe ways, means, and appliances which this plaintiff could not see, and plaintiff was by said officers and agents therein negligently and carelessly and roughly assaulted and struck and beaten and wounded with some hard substance of considerable weight and force, upon pelvic bone of hip, so as to cause this plaintiff great bodily pain and suffering, and that he was so struck with great and unnecessary force, from which his hip bone was injured, fractured, and shattered, and which has caused him to be permanently injured, and to be unable to pursue his usual avocation, that of a railroad engineer, and from which pain and bodily suffering he has already been caused to lose his earnings at such avocation already for the space of eight successive months, and from which he has spent large sums of money for doctor bills and medical treatment, and it has caused him great bodily infirmity, and from which he is permanently injured, and he fears and has reason to believe for his life. Wherefore plaintiff says he is damaged by defendant in the sum of twenty thousand dollars, for which he sues and demands judgment."

On the petition of the defendant in error the case was removed into the Circuit Court of the United States for the Northern District of Mississippi. In that court the defendant submitted its plea, as follows: "And now comes the defendant, the Sovereign Camp Woodmen of the World, by its attorney, James Stone, and for plea in this cause says that it is not guilty of the wrongs and injuries complained of by ———— in his declaration. And of this the said defendant puts itself upon the country. The plaintiff in the above-styled cause will take notice that on the trial defendant will offer proof to show that the alleged injury complained of by plaintiff was not inflicted by the defendant or any of its agents or officers, but that, if plaintiff received any injury at all, it was at the hands of some person or persons for whose conduct the defendant was in no wise responsible, and that the act which plaintiff alleges was the cause of his injury was not authorized or required or sanctioned by any by-law, rule, or regulation of defendant order, and that the defendant had no control whatever of the party or parties who may have committed the act which plaintiff alleges resulted in his injury."

After the offering of testimony on behalf of each of the parties had closed, the court, on motion of the defendant, instructed the jury to return their verdict for the defendant, which was done, and judgment entered thereon. The only material error assigned is that "the court erred in instructing the jury peremptorily to return a verdict for the defendant." All of the evidence offered on the trial is brought up in the transcript, and, as far as deemed material, is referred to in the opinion of the court.

J. C. Wilson, for plaintiff in error.

James Stone, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

McCORMICK, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The judge of the Circuit Court appears to have made no announcement of the ground on which he sustained the motion of the defendant for peremptory instructions. The motion appears to have been oral, or, if made in writing, is not brought up in the record. In the brief submitted by the counsel for the plaintiff in error it is said that:

"Obviously the court's direction of the verdict must have been based on the idea that the sovereign camp, the real corporation, was not responsible for the action of the individual members in the initiation, because the method pursued by them was not the method prescribed in the ritual, which was their book of rules given by the sovereign camp for just such initiations."

In the brief submitted by the counsel for the defendant in error are these three suggestions in support of the action of the trial court:

"First. There was no such relationship existing between the sovereign camp and the Water Valley Camp which would make the one responsible for the unauthorized acts of the other, and therefore the general doctrine of master's or principal's liability for the acts of the servant or agent does not apply.

"Second. The sovereign camp is nothing more than a mere trustee to distribute the funds of the individual members of the various local lodges, collected for specific benevolent purposes. It has no power to acquire property, except by contribution from its members, who only contribute for payment of death losses and the actual expenses of carrying out the system of distribution.

"Third. The scintilla rule does not control in the federal court, and therefore, under the facts of this case, the trial court felt that it would be unconscionable to permit a verdict for the plaintiff."

A full examination of the proof in the case clearly shows that the third one of these suggestions is not well taken. It is evidently pointed at the conflict in the testimony on the issue as to whether the plaintiff was hurt in the lodge at Water Valley. On that issue there is evidence tending to support his contention. If neither of the other grounds justified the withdrawing of the case from the jury, it is clear that it should not have been withdrawn.

As to the second of these suggestions, it is sufficient for us, at this time, to say that except so far as it may be considered in connection with the first suggestion, which we will discuss later, the record does not show us the terms of the charter of the sovereign camp, or of its constitution and by-laws, if such exist; nor is the substance of these shown by any of the testimony offered on the trial.

Before considering the first suggestion made by the counsel for the defendant in error, we will notice the substance and effect of the remark taken from the brief of the counsel who appeared for the plaintiff in

·error. He cites the case of Kinver v. Phœnix Lodge I. O. O. F., 7 Ontario Reports, Q. B. Division, 377. The opening sentences of the opinion in that case are the following:

"It is quite clear that the servant, acting in the line of his duty, business, and employment, will render the master liable for the acts he does. It is at times difficult to determine what acts of the servant will be considered to be done within the line of his duty, business, and employment."

The proposition of the counsel is that the members and officers of the Water Valley lodge did the plaintiff hurt, and their principal, the defendant, is liable for damages. The general doctrine here suggested is familiar, but the researches of counsel have discovered very few authorities where issues of this kind have been passed upon, involving injury by initiation in secret orders. In addition to the case mentioned above, he cited the case of State v. Williams, 75 N. C. 134. In this latter case the individual who inflicted the injury was charged with assault and battery. The proof showed that the prosecutrix had been a member of the Society of Good Samaritans, and, having been remiss in some of her obligations, the society proceeded to perform the ceremony of expulsion, which consisted of a suspension from a wall by a cord fastened around the waist. The same ceremony had before been performed in the presence of prosecutrix. As soon as the cord hurt her she was released, and at once fainted. The court, in passing judgment, observes:

"When the prosecutrix refused to submit to the ceremony of expulsion established by this benevolent society, it could not be lawfully inflicted. Rules of discipline for this and all voluntary associations must conform to the laws. If the act of tying this woman would have been a battery had the parties concerned not been members of the Society of Good Samaritans, it is not the less a battery because they were all members of that humane institution. The punishment inflicted upon the person of the prosecutrix was willful, violent, and against her consent, and thus contained all the elements of a wanton breach of the peace."

This case might be authority, more or less persuasive, to support a conviction on a charge of assault and battery made against the individual members of the Water Valley lodge, who are shown to have struck the blow of which the plaintiff complains. In the other case cited the proof showed that the plaintiff, in the course of his initiation, was blindfolded by the conductor of the lodge, who was in the anteroom, and was then taken by him and given in charge to the conductor who was inside of the lodgeroom, and while in his charge the linen cover of an organ was held before him, and he was pushed violently by some one or more of the members at the small of the back, and sent forward about seven feet, and, at the same time coming in contact with the organ cover, which was held so as to catch him a little above the knees, he was tripped, and, going beyond the cover, either at the side or at the other end, he struck the side of his head upon the floor, and, as he says, the cover was then raised, and his feet were raised by it, so that his back was hurt, and he felt he was hurt in the back. When he got up, the ceremony was then properly proceeded with. On the issue as to whether the plaintiff was hurt, the appellate court found that there was evidence to support the claim, and they would not be justified in interfering with the decision of the trial court. On the issue as to the lia-

bility of the lodge in damages for the injury inflicted, the court observed:

"This proceeding, being taken in open lodge, while the principal officers and a number of the members were present, so as to constitute a full and perfect meeting, and where none but members and the candidate were or could be present, is manifestly a proceeding taken with the knowledge of all those who were there and who represented the corporate body; and where it appears that these and the other proceedings had taken place on such an occasion. and that they were allowed and not checked, it shows, I think, they were taken also with the consent of the body which was then in open lodge assembled."

The opinion closes with this paragraph:

"The plaintiff has claimed compensation. That has been awarded to him. It will be better in all such bodies to enforce rigidly the directions given by the ritual of this order—'no rough usage to be allowed to the candidate'—for a practical joke or lark at such time, although sport to the one party, may be very hurtful to the other. and might end quite differently from what was desired or what possibly could have been expected."

If the Water Valley lodge or camp was a corporate body, authorized to sue or liable to be sued, and had been sued in this case, the authority just considered might be held to sustain a judgment against it for damages. In the Phœnix Lodge Case we may infer from the fact that the suit was entertained, and from the use of the language "corporate body," as shown in the extract from the opinion given above, that this lodge was incorporated, so as to make it a legal entity and liable to suit as such. The report of the case does not furnish more satisfactory proof on this point. In the case before us the local camp, or lodge, as it is more frequently called by the members—probably because they are members also of other associations in which a like organization has the name of lodge—appears to have had a complete organization, presided over by a chief officer, who was aided in the conduct of its regular business by other officers, all of whom appear to have been selected and elected by the members of the lodge, and to fill places and stations in the lodge which could be filled, in the absence of the regular incumbents, by any of the obligated members present. It appears to have had appointed times of meeting at a designated hall, suitably equipped, and members of a given lodge, when a change of their residence or other cause made it desirable for them to change their connections from one local lodge to another, were able to do so under the respective rules. It was evidently a fully organized body—whether a corporate body or not is not expressly shown by the pleadings or the proof, or otherwise, except as it may be inferred from the admission of the counsel for defendant that the charter of the local camp of the Woodmen of the World was issued and granted by the sovereign camp under the laws of its order. Doubtless the Phœnix Lodge of I. O. O. F., above referred to, which appears to have been a corporate organization, had, besides its own corporate entity, if it was a legally incorporated body, a charter from the supreme or grand lodge of that order, or from some superior body in whose jurisdiction it was embraced, and from whom it derived its powers to initiate members and confer the degrees it was authorized to confer.

The only thing in the shape of a law, statutory or fraternal, brought up in this record, is the ritual prescribing the ceremony for communi-

cating the protection degree to accepted applicants. The proof in this case shows that the plaintiff received the hurt of which he complains from the pushing against him with too much violence an artificial goat which was used in certain proceedings that were had in the lodge the night he was initiated. It clearly appears from an inspection of the ritual itself, and from the testimony of all of the witnesses, that this part of the proceeding is outside of the method prescribed by the sovereign camp for communicating the protection degree. The proof tends to show that the Water Valley lodge was organized and operated many years before it adopted this outside, irregular ceremony. The proof tends to show that probably it is the only local camp in the state of Mississippi in which the goat exercise is used. The defendant insists that even in the Water Valley lodge it is not treated as a part of the initiation proceedings, and that it is never used at all on any subject until he has been fully initiated and pronounced to be, and congratulated as being, one of the obligated sovereigns of the camp; that it is sometimes used on the night of the initiation after the initiation is complete, and sometimes, perhaps often, used at a subsequent night, depending upon the number in attendance, and somewhat upon the number who are to be the subjects of its treatment. It is shown, however, that in this case and in other cases it was done in open lodge, with a quorum of members and a complement of officers present, but in a recess of the regular order of business, when the lodge appears to have been standing at ease for the purpose of letting the brethren take part in the play.

The case of Kinver v. Phœnix Lodge, supra, may be considered as authority, more or less persuasive, for holding that whether it be a part of the regular prescribed ceremony of initiation or not, if the lodge would be responsible for the injury inflicted if it had been done during the progress of the regular ceremony and had been a part of it, the lodge would be equally liable when done, as this was done, in open lodge, when those present, as the members and officers here were present, would be taken as representatives of the organized body, and the body itself be held liable for their conduct. But, as we have already said, this case, for some reason, is not brought against the local lodge, but against the sovereign camp, and that brings us to consider the first of the suggestions made by the counsel for the defendant in error. There is nothing in this record to show that the Sovereign Camp of the Woodmen of the World did not exist, duly organized as such, before it became a corporation, and was duly organized as such under the laws of the state of Nebraska; nor is there anything in the nature of the case which excludes this assumption. The establishment of fraternal and benevolent associations may have a different and much wider foundation for their support than the terms of a statutory charter may furnish. The great religious communions, branches of that spiritual body of believers which constitutes the church and pervades civilization with its beneficence—not alms for the comfort of the physical man only, or chiefly, but fraternal fellowship and helpfulness, for the culture and upbuilding of the soul and inspiring its possessor with the desire and ability to live a better life—have an organization complete, which is independent of the state. To the vital organs and functions of this spiritual body it is convenient and useful to add cer-

tain, and often large, secular interests, for the holding, protecting, and administration of which it is permissible, and not unusual, to ask and obtain the aid of the state, through legislative acts incorporating certain societies or companies of these great brotherhoods. Some of these legally incorporated divisions may have a relation of headship to numerous subordinate companies, whose functions the chief organization prescribes in certain essential particulars, and whom it supervises in its own appointed way with recognized right and power to enforce its prescriptions of duty by penalties to the ultimate extent of dismemberment. These subordinates may, in like manner, become incorporated without changing their relation of subordination.

The secular interest may largely predominate in the fraternal order of Woodmen of the World, especially in its protection degree; but to hold that because the sovereign camp is admitted to be incorporated for some purposes not shown, and because it is not shown whether the Water Valley Camp is or is not incorporated, and because the Water Valley Camp is authorized by warrant or charter from the sovereign camp to communicate its protection degree to worthy applicants according to a ritual prescribed by the sovereign camp, that thereby the sovereign camp is put in such a position of master or principal of the Water Valley Camp as to constitute the latter the servant or agent of the former, so as to render the sovereign camp liable in civil damages to the plaintiff for injuries claimed by him to have been inflicted on him by the Water Valley Camp, or some of its members, in open lodge, while communicating to him the protection degree, is to carry the rule relied on far beyond the bounds of reported adjudications. The prosecution of suits against the great corporation carriers and other huge corporate industries, for the recovery of damages for personal injuries resulting from the negligent or wrongful action of their employés and agents, has become almost a separate industry, engaging the services of a large section of the legal profession. These cases crowd the reports of all the courts of last resort. To such an extent has that been done in late years, and is being done now, that appellate courts are familiar with the growth and extended application of the rule or rules determining the liability in civil actions of the principal or master for the conduct of the agent or servant, acting in the line of his duty, business, or employment.

The view we have taken of this case makes it unnecessary for us to consider, or at least to cite from, the current of authorities, beginning with the earlier cases of McManus v. Crickett, 1 East, 106, and Wright v. Wilcox, 19 Wend. 343, 32 Am. Dec. 507, down to the more recent cases, one of the most interesting of which is Richberger v. Express Company, 73 Miss. 161, 18 South. 922, 31 L. R. A. 390, 55 Am. St. Rep. 522.

As has been already said, we are not furnished in this case with any proof as to the extent of the power and obligations conferred upon the Sovereign Camp of Woodmen of the World by its organization under and by virtue of the laws of the state of Nebraska. The proof bearing at all on the subject tends to support the second suggestion of the counsel for the defendant in error, to the effect that the sovereign camp is a mere trustee to distribute the funds of the individual members of the

various local lodges, collected for specific benevolent purposes, without power to acquire property, except by contribution from its members, which is made only for the payment of death losses and the actual expenses of carrying out the system of distribution. The protection degree, it is said in the ritual, is the business degree of the fraternity. The proof tends to show that each of the applicants who receives this degree, and pays a specified first assessment, and signs a certain slip that goes with the certificate, is entitled to receive a certificate showing the extent to which he is insured. The ritual itself says that the clerk of the local camp must be paid the entrance fee before the applicant for the degree can be admitted. The witness W. A. Nolan, who was called for the plaintiff, being asked, in reference to the payment of the first assessment and the signing of the slip that goes with the certificate, "Has that anything to do with the initiation? Can he pay that after that night?" answered, "Yes, sir; he can pay it the next day or at any time after, within the prescribed time, but his insurance is no account until that has been paid." It is pretty clear that, on terms and conditions prescribed, when he receives the protection degree he is entitled to some measure of insurance. The amount of which and the terms upon which it is awarded are not shown. Nor is it shown what officer of the local camp receives the first assessment and the slip that goes with the certificate after the same has been duly executed. As to whether it is the clerk or not who does this, the record is silent.

In Knights of Pythias v. Withers, 177 U. S. 263, 20 Sup. Ct. 613, 44 L. Ed. 762, it appears that a general law of that order provided:

"Sec. 6. The secretary of the section shall forward to the board of control the monthly payments and dues collected immediately after the 10th day of each and every month."

In that suit, which was on a certificate of insurance, the Supreme Court held that this secretary was the agent of the board of control as to the receiving and forwarding of the monthly payments and dues required to be collected and forwarded. And if this action were against the sovereign camp on a certificate of insurance it might be held, and doubtless would be held, that either the local camp or some one of its officers was the agent of the sovereign camp for the purpose of collecting and forwarding the assessments and dues, if, by the general laws of the order, these were required to be forwarded to the sovereign camp or to a certain one or ones of its officers. In such a suit the doctrine of agency, as the same has been so often and exhaustively considered in reference to policies of insurance issued by mutual or general stock companies, would be instructive and useful in enabling us to determine the relations between this local camp, or certain of its officers, and the sovereign camp, in connection with its contract of insurance issued in the shape of a certificate to members who had received the protection degree. But the numerous cases which fill the books, founded on these contracts of insurance by commercial companies, do not help us to determine the question of the liability sought here to be enforced against the sovereign camp. Taking all the proof in this case, we think the first suggestion of the counsel for the defendant in error is well taken, at least to this extent: that the plaintiff has not shown that there does exist between the sovereign camp and the Water Valley Camp such

relationship of master and servant, or principal and agent, as renders the sovereign camp responsible for the acts of the Water Valley Camp in the matters of which the plaintiff complains.

The judgment of the Circuit Court is affirmed.