## SOVEREIGN CAMP OF WOODMEN OF THE WORLD v. JACKSON.

No. 5131.   Opinion Filed April 18, 1916.

(157 Pac. 92.)

1.  **INSURANCE—Fraternal Benefit Insurance—Initiation of Applicant—Necessity.**   When deceased has been accepted for membership by the local camp, and his application for insurance has been accepted by the head camp, and benefit certificate issued, and same has been delivered to the member and his dues collected thereon, the lodge is estopped to deny that he is a member, and will not be heard to object that he has not been initiated.

2.  **SAME—Contract—"Good Health."**   The phrase, "in good health," is a comparative term, and the fact that deceased was suffering with a slight cold at the time the benefit certificate was delivered to him, which afterwards developed into pneumonia, and caused his death, will not defeat a recovery upon the benefit certificate under the stipulation that the insured be "in good health" when the policy is delivered to him.

(Syllabus by Watts, C.)

ON REHEARING

3.  **SAME—Extent of Liability.**   A beneficiary certificate issued by the order of the Woodmen of the World, contained a clause that the order would pay the sum of $100 for the erection of a monu-

ment to the memory of the member to whom the certificate was issued. **Held**, in default of the erection of said monument, the beneficiary named in the policy or certificate was not entitled to a personal judgment for the said $100.

(Syllabus by Mathews, C.)

*Error from District Court, Bryan County; Jesse M. Hatchett, Judge.*

Action by Mrs. Daisy Jackson against the Sovereign Camp of Woodmen of the World. Judgment for plaintiff, and defendant brings error. Modified and affirmed.

*Maxey, Jackson & Dial,* for plaintiff in error.

*Utterback, Hayes & MacDonald,* for defendant in error.

Opinion by WATTS, C. On the 5th day of December, 1911, William E. Jackson made a written application to become a member of the local camp of the Woodmen of the World at Kenefick, Okla., and was on that day examined, and the application for insurance and medical examination forwarded to the home office of plaintiff in error. On the 14th day of December, 1911, the medical examination was approved, and the certificate sued on was issued by the proper officers, and sent to the proper officers of the local camp at Kenefick for delivery to the applicant, and was delivered to Jackson on the 29th day of December, 1911, and his receipt taken therefor and the initial payment of dues thereon paid by Jackson. At the time of the delivery of the policy to Jackson he was suffering with a cold, accompanied by a slight fever, and late in the afternoon of that day a physician was called, though it does not appear whether the physician was called or the policy delivered first, except that the physician stated that he was there very late in the afternoon. Pneumonia shortly set up, and on the 12th

of January following Jackson died. Payment was re-
fused on the policy, and this suit was brought by the
widow (who was the beneficiary) to recover $500 under
the insurance contract, and $100 which was provided for
in the policy as a monument fee. A jury was waived, and
the case heard by the court, who rendered judgment in
favor of the widow in the sum of $600, and from that
judgment, this appeal is prosecuted by plaintiff in error.

The principal questions raised on this appeal are
the following:

(1) Whether William Jackson was regularly in-
itiated into the lodge so as to entitle the beneficiary to
recover on the certificate.

(2) Whether the deceased was in good health at
the time the certificate was delivered to him.

(3) Whether the widow is entitled to recover the
monument fee of $100.

The benefit certificate issued to Jackson contained
the following provision:

"There shall be no liability of the Sovereign Camp
of the Woodmen of the World under the certificate until
the member named herein shall have * * * been
obligated or introduced by a camp or authorized deputy in
due form, and had manually delivered into his hands, in
person, this beneficiary certificate while in good health.
The foregoing provisions are hereby made a part of the
consideration for and are the conditions precedent to the
payment of benefits under this certificate."

Section 58 of the constitution and by-laws of the
order makes the fulfillment of substantially the same pro-
visions a condition precedent to a recovery upon the cer-
tificate.

The local lodge of regularly initiated members, each one attending camp, and alike· furnishing and receiving the mutual support and strength of the order, is the root, branch, and stock of the fraternal insurance organization. The reasons why initiation is made a condition precedent to a participation in the benefits of the organization are sound both in theory and in fact. Upon these reasons, even after the candidate has been accepted for membership by vote of the lodge, and after his physical examination has been approved by the central offices and the certificate issued, should the candidate refuse to be initiated into the lodge in conformity with its by-laws, it would have the right to refuse to accept the payments of dues by the candidate and withhold delivery of the certificate. In a fraternal organization, where each member is supposed to contribute his attendance to the meetings, and his personal influence and interest in the order, the lodge has the right to make conformity to these personal ends and purposes of the lodge a condition precedent to the completion of its insurance contract and liability on its part. They are in their way as much a part of the consideration of the benefits of the order as the payment of the premiums, or dues, as they may be called. The lodge has the right to fix the mutual duties and obligations of the members, and the requirement of initiation is as binding as any other condition precedent of the contract. However, if the lodge desires to insist upon strict compliance with the precedent conditions of the contract, it must do so at the proper time. The evidence in this case is not satisfactory as to whether the formal condition precedent of initiation was complied with or not, but we feel persuaded from the evi-

57—11

dence that the deceased was not initiated. This was suffi-
cient reason for the officers of the lodge to refuse to ac-
cept his dues and withhold delivery of the certificate, and,
if the lodge had stood on its rights at the proper time, the
defense would now be good here. But the lodge did not
do this; on the contrary, it enrolled Jackson as a member,
made delivery of his policy, took his receipt therefor, col-
lected his insurance premium or dues, sat up with him in
his sickness and paid for his nurse, and buried him with
the honors of the lodge when he was dead.

The organization, having collected the premium (or
dues) on the certificate, and having treated Jackson as
sufficiently a member for the collection of his dues, and
having rece'ved those dues and delivered the policy (or
certificate), cannot now be heard to say that he was not
a member. If he was a member for the payment of dues,
he was a member for the protection of the insurance which
those dues paid for. The time for the plaintiff in error
to have questioned his membership was before the deliv-
ery of the certificate and the collection of his dues, and,
not having questioned it then, it cannot question it now.
Plaintiff in error cites no case where the fraternal organi-
zation with like stipulation in its policy and by-laws and
under like facts has been permitted to question a man's
membership after it has enrolled him as a member and
delivered the certificate and collected the premiums.

The case of *Matkin v. Supreme Lodge Knights of
Honor*, 82 Tex. 301, 18 S. W. 306, 27 Am. St. Rep. 886, is
cited and quoted from at length by plaintiff in error on
this question, but that case is not at all in point here.
Under the facts of that case Matkin had failed to present
himself for initiation, but had tendered the dues for his

policy. The lodge had refused to accept his dues, and had not delivered him the policy. In that case the court properly held that Matkin was not a member. No question of waiver of initiation by the organization was presented, nor was there any element of estoppel in the case. The lodge, not having treated Matkin as a member while he was living, was not required to so treat him when dead. Not only so, but the Civil Court of Appeals of Texas in the case of *Fraternal Mystic Circle v. Crawford*, 32 Tex. Civ. App. 603, 75 S. W. 844, held that, where one has not been initiated, yet the fraternal organization delivers the insurance certificate to him and receives his assessments, the lack of initiation is no defense, but will be held to have been waived. The court said:

"The first assignment of error is that the court erred in rendering judgment against appellant, because deceased was never initiated into the Fraternal Mystic Circle. The evidence does show that deceased never appeared before the local ruling for initiation, and was never initiated into the order, but it further appears that, with a full knowledge of this fact, the ruling received all his assessments and dues, and delivered to him the benefit certificate. We think that in thus treating him as a member, and in delivering to him the certificate, the appellant cannot be heard to question his membership. It has waived the matter."

See, also, *Perine v. Grand Lodge*, 48 Minn, 82, 50 N. W. 1022.

This, we think, is sound. The central organization's interest in the payment of the dues is direct, but its interest in the initiation, the attendance of the members at lodge meetings, and the strength and support of the

activity and influence of the member is only indirect. On the contrary, the initiation of the member and his attendance and support and influence are matters of direct interest to the local camp, and the insistence upon each member's compliance with these things is rather a matter for the local lodge, and not for the head camp.

In *Jumper v. Sovereign Camp of Woodmen of the World* (the same defendant as here), 127 Fed. 635, 62 C. C. A. 361, the defendant was sued for damages for personal injury growing out of an initiation into a local camp, and it set up as a defense that the local camp was not the agent of the head camp for the purpose of the initiation of the members, that the head camp had nothing to do with the matter of initiation of members of local camps, but that the initiation was purely the matter of the local camp, and that the Sovereign Camp was nothing more than a mere trustee to collect and distribute funds collected from the members of the local lodges for specific benevolent purposes. The court sustained this view of the matter and dismissed the action for damages. Here plaintiff in error (defendant in the Jumper Case, *supra*) reverses its position and sets up as a defense that initiation is absolutely of the essence of the insurance contract, and claims that, instead of being merely a trustee to collect and distribute funds, the head camp is itself in the initiation and lodge business. While it is true that the defendant has the right to set up conflicting and inconsistent defenses in different cases in different courts, the constitution and by-laws introduced by plaintiff in error in this case support the view of the Jumper Case that the initiation is a local matter in which the head camp has no interest, rather than the position which

it takes here that the initiation is a matter of essence of the contract with the head camp. If this is true, then the local camp has authority to waive the initiation, and the consent of the head camp thereto is immaterial. While the local camp has the right to insist upon conformity to the requirement of initiation and otherwise refuse to deliver the policy or receive the assessments or enroll one as a member, it does not follow that it must insist upon it. The fact that the head camp requires report and certification to it of the collection of dues (which is the final essence of the matter to the head camp) and does not require report or certification at all as to initiation is persuasive that it does not itself consider the initiation of the essence of the insurance contract. We do not mean to say that, initiation being prescribed by the head camp, if a candidate is initiated in fact, the local lodge might not be deemed the agent of the head camp for the purpose of the initiation, and might not be liable for the results of the initiation; but that question is not passed upon. We are only holding that, in view of the facts of this case, as to whether the contract of insurance between Jackson and the lodge was complete, the lodge is estopped on that question. While plaintiff in error strongly contends that the initiation is absolutely essential to the contract, it makes no showing that, if the head camp had known that Jackson had failed to be initiated, it would have refused to accept his dues and demanded that he be stricken from the roll of members of the local lodge unless initiated. Unless it would have done this under circumstances of a living member in good health, paying his dues, it cannot claim the right to do it after his death. If it is an essential to the contract of the dead, it is also an essential to the contract of the living. The burden is on the defendant on

this question, and it has not sustained the burden under the facts.

When the head camp has no direct interest in whether the candidate is carried through the ceremony of initiation or not, and when it does not appear that even any report or certification as to the initiation of a member is required to be made to the head camp by the officers of the local camp, and when the head camp has received that about which it requires report to be made (that is, the payment of the premium), and the local camp has waived compliance with a form which is purely a local matter (that is, the initiation), it would be foolish to say that the head camp could wait until a member has died and then go to the local camp and look into whether purely local matters have been complied with and repudiate its liability on account of local form (the initiation) when it has received the substance of the insurance contract to it (the asssessments or dues).

By the provision of the policy and section 58 of the by-laws of the order it appears that initiation is a condition precedent to the delivery of the policy and the collection of dues. It appears from the reported cases that some fraternal organizations provide for the delivery of the policy and the collection of dues, and then make initiation within a certain specified time thereafter a condition subsequent to put the policy in force. Some of these cases making initiation a condition subsequent have been cited here in support of the contention of the plaintiff in error. Without discussing the merit of the holding, it is sufficient to say that these cases do not touch the question presented here, for by the provision of the policy and section 58 of the by-laws of the order initiation is

provided for as a condition precedent, and not a condition subsequent, to the delivery of the policy and the collection of the dues. Where the initiation is a condition subsequent, the delivery of the policy and the collection of the dues is not necessarily a waiver of the rights of the lodge to object that the insured did not thereafter comply with his contract and complete the contract of insurance. But here the policy was delivered, and the premium or dues collected without the performance of the formal condition precedent, or initiation. The distinction between the two lines of cases is so obvious as not to require comment. There is some contrariety of opinion as to what extent the local camp is the agent of the head camp (see *Jumper v. Sovereign Camp Woodmen of the World,* 127 Fed. 635, 62 C. C. A. 361, and *Mitchell v. Leach,* 69 S. C. 413, 48 S. E. 290, 66 L. R. A. 723, 104 Am. St. Rep. 811, as holding contrary views on this question), but in any event, for the purpose of the completion of the insurance contract, it must be held to be the agent of the head camp for all purposes of initiation and with full power consequent thereto, and by the general laws of agency its knowledge as to the initiation of the member must be the knowledge of the head camp *(Shultice v. Modern Woodmen of America,* 67 Wash. 65, 120 Pac. 531) ; and, while it may not have the power to waive any formal condition of the policy *(Modern Brotherhood v. Beshara,* 42 Okla. 684, 142 Pac. 1014), still, it having enrolled Jackson and having treated him as a member, its knowledge as to the lack of initiation being the knowledge of the company, and its collection of the premium or assessment being the collection of the company, either waiver or estoppel is sufficient to defeat the defense raised by plaintiff in error. While it cannot be said that from the reasoning of the

cases above referred to the plaintiff in error is wholly without authority to support its position, the great weight of authority clearly supports the rule herein laid down; but, independent of the weight of authority, sound principle requires the ruling herein. And especially is this true when by the testimony in this case the deceased was enrolled as a member of the lodge, was reported by the local camp to the head camp as a member having paid his dues and assessments, was attended by the local lodge in his sickness, had a nurse provided by the lodge, and his funeral conducted with the rites and honors of a member. Being a member for all other purposes (and especially for the purpose of paying dues), we must hold him a member for the purpose of the protection of the insurance which he had paid for. To hold otherwise would be to exalt form above substance, disregard the ordinary law of contracts and agency, and ignore the law of estoppel.

2. The question as to whether the deceased was in good health when the benefit certificate was issued to him or not, is purely a question of fact, and we shall touch upon it but lightly. The physician who was introduced by the defendant on cross-examination testified as follows:

"Q. When you were first called he had an ordinary cold? A. Yes. Q. You anticipated at that time no serious trouble, I told him he would be up in a few days. Q. That was your idea at that time? A. Yes. Q. He wasn't in a serious condition on the 30th? A. No, sir; nothing serious. Q. And nothing to cause you to apprehend danger at that time. A. Yes. Q. Just temporary cold in the early stages of grippe? A. Yes."

In his findings of fact the district court found that when the benefit certificate was delivered to Jackson on

December 29, 1911, "he was in good health within the meaning of the provisions in said policy." The words "in good health" do not imply physical perfection and freedom from all the ailments that flesh is heir to. To be not in good health within the meaning of the policy must be in such physical condition as to materially affect the risk, or such that, if the company had known the condition of the insured, it would not have delivered the policy. The fact that a man had the incipient elements of disease (the seeds of death) in him, which may or may not shortly spring up into fatal disease, does not mean that he does not fulfill the meaning of the term "in good health." To be in "good health" is a comparative term, and a man with a slight cold, such as to cause no apprehension of anything serious, can accept a policy of insurance "in good health" without being considered to have perpetrated any fraud upon the company or to have rendered his insurance contract void by reason of a violation of its terms. The finding of fact by the court is sound upon reason and authority. See *Barnes v. Fidelity Mutual Life Ass'n*, 191 Pa. 618, 43 Atl. 341, 45 L. R. A. 264; *Woodmen of the World v. Locklin*, 28 Tex. Civ. App. 486, 67 S. W. 331; *Poole v. Grand Circle Women of Woodcraft*, 18 Cal. App. 457, 123 Pac. 349; *National Life Ins. Ass'n v. Roe*, 137 Iowa, 696, 115 N. W. 500, 17 L. R. A. (N. S.) 1144; *Schofield v. Metropolitan Life Ins. Co.*, 79 Vt. 161, 64 Atl. 1107; 8 Ann. Cas. 1152; May on Insurance, sec. 295; 3 Joyce on Insurance, sec. 2004.

For the reasons given, we recommend that the judgment be affirmed.

## ON REHEARING.

Opinion by MATHEWS, C. The trial court gave a personal judgment in favor of the beneficiary for the monument fee of $100, and in the original opinion herein the judgment was affirmed *in toto*. Upon rehearing the plaintiff in error strongly urges that the $100 monument fee is no part of the insurance, but is for the erection of a monument, and cannot be applied to any other purpose. The beneficiary certificate provides in its face:

"There shall also be paid the sum of $100.00 for the erection of a monument to his memory, as provided in the constitution and laws of the order."

Section 70 of the constitution and by-laws of the order on this subject reads as follows:

"(a) As soon as a death claim has been approved for payment, the Sovereign Commander, with the concurrence of the Sovereign Finance Monument Committee, who shall constitute the Sovereign Monument Committee, shall cause to be contracted for and substantially placed to the memory of every deceased member a monument of marble or granite and of such design as the committee may accept, as provided in section 3, of the full value and cost to the order of the sum of one hundred ($100.00) dollars, on which shall be carved, in a manner as directed by the Sovereign Monument Committee, the motto and emblem of the order and the words 'Woodmen of the World Memorial'; also the name, date of birth and date of death of the deceased sovereign, and such additional inscription as the beneficiary may order and pay for, if approved by the Sovereign Monument Committee.

"(b) Proposals for furnishing and placing said monument shall be obtained through a camp located nearest to the place of burial, if practicable.

"(c) When satisfactory written evidence has been received by the Sovereign Monument Committee that a

monument has been erected in full compliance with the contract entered into between the order and the contractor, they shall direct that a warrant be drawn on the beneficiary fund in favor of the contractor in payment of the same."

The only case brought to our attention wherein this question has been presented is *Woodmen of the World v. Locklin,* 28 Tex. Civ. App. 486, 67 S. W. 331, and there the beneficiary was given a personal judgment for the monument fee, but the question as to whether or not the beneficiary was entitled to a personal judgment for this $100 monument fee was not raised or directly passed upon; the court simply affirming a judgment giving the same to the beneficiary without comment on this point. As the judgment in that case was not contested on the grounds that the beneficiary was not entitled to the monument fee under the terms of the policy, that case cannot be considered as of much weight or authority on the question now presented here. Upon a careful consideration of the terms of the contract and the by-laws of the order on this question, we are of the opinion that the plaintiff in error cannot be held personally liable to the beneficiary for the monument fee in default in the erection of the monument. The only contract, as far as the beneficiary was directly concerned, was to pay the beneficiary a specified sum in money upon the death of the principal named in the policy. The erection of the $100 monument was only incident to the contract, and was for the benefit of the principal himself, to the effect that his grave should be marked by a monument of the order.

Even if it be conceded that the plaintiff in error became liable in money upon its failure to erect the monument, the beneficiary would have no right to claim the

same as a beneficiary, but it would go to the estate, and the right of action therefor would be in the administrator, and not in the beneficiary. The beneficiary might be a party who had no right to participate in the distribution of the estate. It appears to us that the proper remedy in case the order failed or refused to erect the monument was for some interested party to have the same erected, and then have the party who erected the same to sue upon the account, or, if the cost of the erection had been paid, then an action for money paid might be maintained.

We recommend that the former opinion rendered herein affirming the judgment be modified by reversing that part of the judgment in favor of the defendant in error for the $100 monument fee, and that the judgment, so modified, be affirmed.

By the Court: It is so ordered.