**GRAND LODGE OF UNITED BROTHERS OF FRIENDSHIP AND SISTERS OF THE MYSTERIOUS TEN v. CARROLL.**

No. 9390—Opinion Filed Aug. 29, 1918.

(174 Pac. 767.)

**1. Insurance — Grand Lodge—Subordinate Lodges—Agency.**

Where, as a part of the general plan of organization, the Grand Lodge authorizes the organization of subordinate lodges for the purpose of facilitating organization, and caring for its members and through which it collects assessments and taxes and confers upon it the authority to enact its own constitution and by-laws, which becomes a member of the Grand Lodge after thus organizing, held, that in its dealings with members the subordinate lodge is the agent of the Grand Lodge.

**2. Same—Action on Policy—Estoppel of Grand Lodge.**

When the constitution and by-laws of a lodge provide a sick benefit for its disabled members, and further provide that all assessments and taxes shall be deducted from such sick benefits and the remainder paid to the member, and where at a meeting the lodge takes action and provides for the payment to a member afflicted with tuberculosis the sum of $1.50 per week, which is in excess of the assessments and taxes due the Grand Lodge, and such sick member is by the secretary of the lodge led to believe that her assessments and taxes are being kept paid, held, that in an action on the policy the Grand Lodge is estopped to deny the member was in good standing.

**3. Same—Default of Member—Forfeiture—Notice.**

Where the constitution and by-laws of a lodge provide that in case of default of its members in the payment of their assessments and taxes a notice shall be given, specifying the time after which the member shall stand suspended or expelled, held, that the giving of such notice is a condition precedent to the right of forfeiture, and that forfeiture does not attach until after the time specified in the notice has expired.

**4. Same—Action on Policy—Payment of Burial Expenses.**

Where a life insurance policy, in addition to the amount to be paid the beneficiary, provides for the payment of the sum of $50 burial expenses, and the beneficiary has contracted and becomeliable for the payment of the burial expenses, such beneficiary may maintain an action for such expenses.

(Syllabus by Springer, C.)

Error from District Court, Tulsa County; Cham Jones, Assigned Judge.

Action by Amie Carroll against the Grand Lodge of United Brothers of Friendship and Sisters of the Mysterious Ten. Judgment for plaintiff, and defendant brings error. Affirmed.

G. W. P. Brown and R. Emmett Stewart, for plaintiff in error.

I. H. Spears, for defendant in error.

Opinion by SPRINGER, C. The parties will be referred to in the relative position they occupied in the lower court.

During the life of Bessie Middleton, the defendant, Grand Lodge of United Brothers of Friendship and Sisters of the Mysterious Ten, a mutual aid association. Beacon Light Temple No. 36, issued to her a life insurance policy for the sum of $225, with the plaintiff, Amie Carroll, mother of the insured, as beneficiary.

The petition alleged in general terms, together with other appropriate facts, all conditions and requirements of the certificate and of the by-laws of the society; and, further, by reason of the membership of the insured, the policy issued her and the by-laws and constitution, constituting the contract between the insured and the defendant, and of the laws governing the burial department of said organization, and article 29 and article 36 of the constitution of the subordinate lodge, the plaintiff sought to recover the sum of $50 as burial expenses for the burial department of the organization, and the further sum of $45, less such sum as the defendant had spent for the benefit of the insured during her illness as sick benefits, and the further sum of $25, due by reason of her membership in another department of the defendant known as the "Royal House," in the total aggregate sum of $345.

The defendant answered, filing a general denial, and the case proceeded to trial upon the theory of the plaintiff that, while a member in good standing of said organization and on or about the 1st day of April, 1914, while the insured was residing at Tulsa, Okla., the insured became ill and incapacitated from performing her usual duties, and that she continued in such state of incapacitation until her death at Blooming Grove, Tex., on the 13th day of November, 1914.

It is further the contention of the plaintiff that it was the duty of the defendant under its by-laws and constitution, to pay the insured during her illness the sum of $1.50 per week, after first deducting such dues and assessments as the association claimed against her and, further, that the organization recognized its duty and undertook to perform it

by crediting the insured with her dues and assessments and promising to pay the balance of the sick benefits later.

As against the contention of the plaintiff, it is claimed by the defendant that the insured became nonfinancial, and thereby forfeited all right to recover upon the policy sued on. The case was tried to the court and jury, and at the conclusion of the testimony of the plaintiff the court withdrew from the consideration of the jury the question of any sum that may be due from the sick benefit fund, and also the claim of $25 by reason of the membership of the insured in the Royal House, upon the ground that the membership of the insured in those two branches of the organization was personal to the insured, and the plaintiff in this action did not have such a personal interest as would entitle her to recover. It is our opinion that the ruling of the court in this particular was correct, as the insurance provided for in those two branches was personal to the insured.

The question of the amount due upon the principal policy and the sum of $50 for burial expenses was submitted to the jury, and it is now alleged that in doing so the court erred. The principal contention here is whether the insured at the time of her death was a member in good standing of the defendant. Under and by virtue of section 4, art. 4, it is provided:

"Should the sickness of a member continue for a period of time so as to threaten the depletion of the treasury, the judge may by a two-third vote of its members at a regular stated meeting reduce the allowance."

And article 29 of the constitution of subordinate lodge provides:

"It shall be the duty of the sick committee to visit the sick and render them such aid as their illness may require. They shall order members in good standing to set up with a brother beginning with the last named on the roll. They shall also draw on the treasury for not less than one nor more than three dollars per week, as the nature of the case may demand. Provided their illness be of no vice. They shall report at every monthly meeting."

And article 36 provides:

"Any member who may be disabled one week from daily labor and who is confined to his bed, or whose sickness is of such a nature that the sick committee shall judge him entitled to sick dues, shall draw from the treasury not less nor more than three dollars per week; if he be in arrears the amount of his indebtedness shall be deducted from his sick allowance, provided he is not two months in arrears, in which case he shall not receive sick benefits."

After the insured became sick with tuberculosis the evidence in this case shows that the subordinate lodge, in compliance with its constitution and by-laws, undertook to keep up the payments of the dues and assessments of the insured. On July 10, 1914, Ella Mitchell, who was secretary, wrote the insured the following letter:

"Tulsa, July 10, 1914.

"Dear Sister Middleton: Your letter was received and the temple was glad to hear from you and glad to know you are getting along as well as you are. Now, Sister Middleton we have paid your dues all up, burial fund and endowment. Now how many weeks do you want pay for. You write and tell us what claim do you want. Our W. S. Mr. Bryson is in Denver and I am acting as W S. The temple means to do what is right and we haven but a little money in the treasury now and the Grand Lodge is on hand, so as soon as we get the money so don't think the temple have forgotten you. I do hope to meet you again, you pray Sister Middleton and the Lord will help you. Now I will close, Look to get the whole amount that you claimes.

"Yours,          Ella Mitchell, W. S."

And again, on August 29, 1914, she wrote her the following letter:

"Tulsa, Aug. 29, 1914.

"Dear Sister: Your letter was received and found all well & glad to know that you are doing so well. Now sister Bessie, about what we will allow you for your sick benefits, it will be 3 weeks sick benefits that the Temple will allow you—and we have paid your dues & grand Lodge tax and endowment is all paid up. And now we haven but a little in treasure, the Temple will keep up your dues and as soon as we get some money in treasure we will see after you. And you send me the name of the Sm T. Temple there so I can write her. Now the sisters all send their love to you & glad to know you are getting along so well. Sister evens and sister Tuitiuir and Sister Gurley and Sister Idylla S. Eastman went up to the Grand Lodge. Now write often. I will be glad to see you with us again.

"From Beacon Light Temple, Ella Mitchell, W. S. 30312 Greenwood."

In addition to these letters the evidence of the plaintiff abundantly proves that the lodge as an organization took action in the premises and ordered money drawn from the treasury for the purpose of paying the dues and Grand Lodge taxes of the plaintiff. But it is contended by the defendant, Grand Lodge of United Brothers of Friendship and Sisters of the Mysterious Ten, that it is not bound by the action of the subordinate lodge, or anything which may have

been done toward leading the insured to believe that her tax dues were paid. With this contention we are unable to agree. The subordinate lodge is the agent of the parent organization, and therefore as such the parent organization is conclusively bound by whatever action was taken by the subordinate organization. Fraternal Aid Asso., etc., v. Powers, 67 Kan. 420, 73 Pac. 65; Mueller v. Grand Grove United Ancient Order of Druids, 69 Minn. 236, 72 N. W. 48; Andre v. Mod. Woodmen of A., 102 Mo. App. 377, 76 S. W 710; Supreme Lodge of Pythias v. Withers, 177 U. S. 260, 20 Sup. Ct. 611, 44 L. Ed. 762; Reed et al. v. Ancient Order of Red Cross, 8 Idaho, 409, 69 Pac. 127; Supreme Lodge Order of Mutual Protection v. Meister, 204 Ill. 527, 68 N. E. 454.

The by-laws and constitution of the parent organization makes the subordinate organization its member and agent, and the constitution and by-laws of the subordinate organization provided that the insured should be paid not less than $1 nor more than $3 per week during the time she was disabled, and, the lodge having voted to pay her $1.50 per week after deducting all sums that may be due as assessments and Grand Lodge taxes, and having led the insured to believe that the subordinate organization had paid the tax due the Grand Lodge, such Grand Lodge is now estopped to deny that all assessments and taxes due from the insured had not been paid at the time of her death. Supreme Forest of Woodmen Cir. v. Stretton, 68 Kan. 403, 75 Pac. 472. Moreover, article 9 of the constitution and by-laws of the plaintiff provides:

"Any member in arrears for dues and taxes for two months shall be notified and if the same is not paid in one month thereafter he shall be suspended until the indebtedness is liquidated."

According to the letter of Ella Mitchell under date of August 29, 1914, all taxes and dues were fully paid up for the quarter ending September 30, 1914.

No rule of law is better settled than the one which declares that where the by-laws of a beneficial or fraternal society provide that the members shall be notified of dues and assessments and required to pay within a specified time, the failure of a member to pay dues and assessments where he has not been notified cannot be made the basis of a forfeiture of the rights to the benefits. The giving of the notice is a condition precedent to the exercise by the society of the right of forfeiture. Supreme Lodge of K. of H. v. Dalberg, 138 Ill. 508, 28 N. E. 785; Scheufler v. Grand Lodge of Ancient Order of United Workmen of Minn., 45 Minn. 256, 47 N. W. 799.

Complaint is made of the instruction of the court submitting to the jury the question of the right of the plaintiff to recover upon the provision in the policy providing that there should be paid the sum of $50 burial expenses. The record in this case discloses that the beneficiary is the mother of the insured; that she contracted and became liable for the payment of the burial expenses of the insured. Where a life insurance policy, in addition to the amount provided for the beneficiary, makes a further provision of $50 for burial expenses, and the beneficiary has contracted the indebtedness and become liable for the payment thereof, she has a right to maintain an action upon the policy for the amount provided therein for such burial expenses. Sovereign Camp of Woodmen of the World v. Jackson, on rehearing, 57 Okla. 318, 157 Pac. 92, L. R. A. 1916F, 166.

We have carefully examined the instructions given by the court and also those requested by the defendant. and we find no error in the instructions given, and no error of the court in refusing to give instruction requested.

The judgment of the lower court is accordingly affirmed.

By the Court: It is so ordered.